[Civil No. 4566. Filed October 4, 1943.]

[141 Pac. (2d) 522.]

YOUNG'S MARKET COMPANY, a corporation, Appellant, v. EDITH E. LAUE and EDITH E. LAUE, as the Administratrix of the Estate of Fred Emil Laue, sometimes known as Fred E. Laue and Fred Laue, deceased, Appellee.

Messrs. Krucker, Fowler & Dodd, for Appellant.

Mr. Thos. J. Elliott, for Appellee.

ROSS J.—This action was instituted by Young's Market Company, a California corporation, against Edith E. Laue, individually and as administratrix of the estate of her deceased husband, Fred E. Laue, to recover the reasonable value of merchandise alleged to have been sold to Fred E. and Edith E. Laue, under the name of ''Desert Shores'' and ''Desert Shores Rendezvous,'' between January 21 and March 1, 1941. Fred E. Laue died on January 24, 1941.

The defense was a denial of the allegations that the Laues were "the owners of and doing business under the name of Desert Shores or Desert Shores Rendezvous" at the times mentioned, and that they had bought any goods or merchandise of plaintiff personally or had authorized any person or agent of theirs to buy goods or merchandise of plaintiff on their account under either of said names or at all.

The case was tried before the court without a jury. At the close of plaintiff's case defendant's counsel moved for judgment in favor of defendant on the ground that plaintiff had not sustained the burden of proof, which motion was granted and judgment entered in favor of defendant Edith E. Laue individually and as administratrix and for costs taxed at $57.16.

The Young's Market Company has appealed from the judgment and assigned several of the court's rulings as error, requiring, as it contends, a reversal and remand of the case for another trial. We state the salient facts of the case.

The plaintiff corporation was the operator of a meat market in Los Angeles, California. Some time before November 5, 1940, Harry E. Krueger, then in Los Angeles saw plaintiff's head meat man and made arrangements to open an account with plaintiff, which account, as the evidence shows, was carried on plaintiff's books as follows: "Harry E. Krueger—trade style Desert Shores Rendezvous" and in that name the account was opened and carried at all times thereafter. If the Laues were mentioned at that time, or if any credit was then arranged on their account, the evidence fails to show it. All the goods were ordered by, shipped and charged to Krueger, the orders being by telegram signed by the name "Desert Shores" or "Desert Shores Rendezvous." Bills or statements of goods sent to Krueger were headed "Sold to Harry E.

Krueger, Desert Shores Rendezvous, Box 124, Tucson, Arizona.'' Shipments were made to Krueger from November 5, 1940 to March 1, 1941.

The plaintiff bases its right to collect the account from Mrs. Laue individually and as administratrix of her husband's estate on the ground that the Laues were and held themselves out to be the owners and operators of the Desert Shores or Desert Shores Rendezvous during the time the merchandise was shipped. As evidence supporting such contention, it offered a written instrument entered into between the Laues and Krueger, dated October 29, 1940, described as a ''Managerial Contract,'' in which instrument the Laues are described as ''employer'' and Krueger as ''manager.'' The agreement between Krueger and the Laues was that the former would buy and the latter would sell the restaurant to him but they were advised or learned that because Krueger had not lived in Arizona a full year and was not a legal voter he could not under the law obtain a liquor license and therefore the contract entered into was to get around that barrier and permit the business to be carried on in the name of the Laues, although it belonged to Krueger. The form the contract was given was to enable the restaurant and saloon to be carried on in the Laues' name even though it was understood and agreed that Krueger was the owner and would assume all liabilities and have all the profits thereof.

At the same time the managerial contract was executed, the Laues gave Krueger and his wife an option to purchase said property and turned its possession over to Krueger, who, without question, operated it as his own until March 2, 1941, when he wrote plaintiff he was ''returning east'' and suggested that ''Any debts under my name must be claimed against the Desert Shores or the estate of Fred Laue . . . . '' For

the option Krueger paid the Laues $1,000 cash and agreed to make other payments on the balance.

On May 21, 1941 plaintiff filed a verified demand against defendant, individually and as administratrix, for the payment of its claim. The evidence is undisputed that the goods sued for were not ordered by the Laues and were not shipped to them nor charged to them by plaintiff. On the contrary, they were ordered by Krueger, sold to him and charged to him. If the Laues are liable for the value of the goods it is because they permitted Krueger to use their name in the operation of the restaurant business. But there is no evidence that the goods sold to Krueger were on account of their credit. No false representations were made to plaintiff by the Laues or by Krueger. Krueger did not pretend to plaintiff that he was buying the goods on the Laues' credit nor did the Laues do any act to plaintiff's knowledge to induce it to extend credit to Krueger.

■■ Under the evidence, the court gave judgment against the plaintiff. The only theory upon which a judgment could be given in plaintiff's favor is that the Laues held themselves out to the public as the owners and operators of the restaurant and thereby induced the plaintiff, to its damage, to extend credit to Krueger. The evidence, however, conclusively shows the credit was extended to Krueger, and to him only, upon his own solicitation and representations. If it appeared that the credit was extended to the Laues, or that the Laues had received or used any portion of the goods sold to Krueger, then we think the Laues might be estopped to deny the obligation to pay. But, in the absence of such evidence, it seems to us that no rule of equity or law would require them to pay the claim.

■ Plaintiff complains of the court's ruling disallowing its offer of mercantile reports made to it by

Dunn & Bradstreet on Fred Laue. It assigns such ruling as error. The reports so offered were mere hearsay and incompetent. 36 Am. Jur., Mercantile Agencies, 179, § 4.

■ Plaintiff assigns as error the ruling ôf the court excluding its offer of an article "published in a newspaper of general circulation, with Laue's knowledge and consent, showing that the Laues were holding Krueger out to the community at large as their agent." If when this offer was made there had been any evidence showing or tending to show the plaintiff had extended credit to the Laues it would have been error to exclude the offer. Under the facts stated above, the ruling was proper.

■ What we have heretofore said disposes of the other assignments of error excepting the one assigning error in the allowance of costs to defendants. $42.16 of such costs consists of the expenses of the attorney for defendant in attending, in Los Angeles, California, the taking of the deposition of Edward R. Koch to be used by plaintiff in the trial of the case. Itemized these expenses were: Railroad and pullman fare from Tucson, Arizona, to Los Angeles, California, and return, and for meals and taxi fare on the trip. The statute, section 34–125, Arizona Code 1939, provides that the taxable costs in the superior court shall include, among others, "costs of taking deposition." In this case the deposition was taken on oral examination, and not upon written interrogatories, and in a foreign jurisdiction. It was absolutely essential that the defendant's Arizona attorney be present at the taking of such deposition to protect his client's interests. It seems to us the expenses of the trip to Los Angeles were legitimate costs in taking the deposition of Koch and that they should be allowed. See *White* v. *Frye*, 27 Ariz. 447, 234 Pac. 34, where the costs of taking

the successful party's deposition, even though it was not used, were allowed.

The judgment of the lower court is affirmed.

McALISTER, C. J., and STANFORD, J., concur.