693 P.2d 362

**STATE of Arizona, ex rel. Robert K. CORBIN, The Attorney General, Plaintiff-Appellant,**

**and**

**Southern Arizonans for Fair Energy Rates; Arizona Community Action Association; and Eugene A. Burns, Plaintiffs-Appellants,**

v.

**ARIZONA CORPORATION COMMISSION and Tucson Electric Power Company, Defendants-Appellees,**

**Southwest Gas Corporation, Intervenor-Appellee.**

**Nos. 1 CA–CIV 6963, 1 CA–CIV 6998 and 1 CA–CIV 7077.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 30, 1984.

Review Denied Nov. 14, 1984.

Chandler, Tullar, Udall & Redhair by Thomas Chandler, Tucson, for plaintiff-appellant State of Ariz.

Arizona Center for Law in the Public Interest by Neal J. Beets and Amy J. Gittler, Phoenix, for plaintiffs-appellants Southern Arizonans for Fair Energy Rates, Arizona Community Action Association and Eugene A. Burns.

Lebowitz & Frondorf by Louis A. Goodman, Phoenix, for defendant-appellee Arizona Corp. Com'n.

Murphy, Ingraham & Clements by Robert T. Murphy and Timothy A. Ingraham, Phoenix, for defendant-appellee Tucson Electric Power Co.

Jennings, Strouss & Salmon by Thomas J. Trimble, Phoenix, for intervenor-appellee Southwest Gas Corp.

OPINION

HAIRE, Judge.

These consolidated appeals are from the trial court's granting of judgment on the pleadings in favor of appellees. The actions arose out of rate-making proceedings before the Arizona Corporation Commission (Commission) which involved ex parte communications between the Commission's hearing officer, the Director of the Commission's Utilities Division, and one of the parties to the rate proceeding, Tucson Electric Power Company (Tucson Electric). Appellants' primary contention on appeal is that rate proceedings before the Commission are quasi-judicial in nature, that the doctrine of fraud on the court applies to such proceedings, and that the ex parte communications resulted in fraud on the Commission thereby requiring dismissal by the Commission of Tucson Electric's rate application. Alternatively, appellants contend that if dismissal was not required as a matter of law, the Commission abused its discretion in not dismissing Tucson Electric's rate application based on the facts presented in this case. Appellants also contend that the trial judge prematurely granted judgment on the pleadings before they had an opportunity to complete their discovery efforts. Separate and unrelated to the foregoing contentions, appellants Southern Arizonans for Fair Energy Rates, Arizona Community Action Association and Eugene A. Burns (hereinafter sometimes collectively referred to as Southern Arizonans) contest the award of deposition costs and the costs of copies of the depositions against them in the superior court proceedings.

Since the judgment in the superior court was based on motions for judgment on the pleadings, the pertinent facts as set forth in the State's and Southern Arizonans' complaints are deemed admitted for the purposes of this opinion, as follows.

In January 1981, Tucson Electric applied to the Commission for a rate increase. In due course the Commission's hearing officer set the application for hearings. Nu-

merous adverse parties participated in the hearings, including Tucson Electric, the staff of the Utilities Division of the Commission [1], Southwest Gas, Southern Arizonans for Fair Energy Rates, and the Arizona Community Action Association. At the conclusion of the hearings and after all evidence had been taken, the hearing officer established a schedule for the filing of briefs and memoranda. The hearing officer ruled that any party electing to do so could file a proposed opinion and order at the time that party filed its opening brief.[2] The hearing officer also ruled that after the parties' reply briefs were filed, he would prepare a recommended opinion and order and that all parties would then be given an opportunity to file objections in accordance with the Commission's Rules of Practice and Procedure.

Thereafter some of the parties to the proceedings, including the Commission staff and Tucson Electric, filed briefs, but no party filed a proposed opinion and order within the required time. After the time for the filing of briefs and proposed opinions and orders had expired, the Director of the Commission's Utilities Division asked Tucson Electric's counsel to draft an order that would generally favor the rate-making methodology proposed by the Commission staff, but also included additional step-rate increases proposed by Tucson Electric.

Tucson Electric's counsel drafted a proposed order and delivered copies of the draft to the Utilities Division director, who then delivered a copy of the draft to the hearing officer. Tucson Electric's counsel was aware that a copy of the draft order was intended for the hearing officer and that indeed a copy was delivered to the hearing officer by the Utilities Division director. The hearing officer also knew that the draft order was supplied by Tucson Electric's counsel.

After the draft order was submitted to the hearing officer, Tucson Electric's counsel had an ex parte meeting with the hearing officer regarding the rate case and the draft order. On the same date, the hearing officer gave a copy of the draft order to a member of his staff. Before the hearing officer left for vacation, he ordered his staff to incorporate revisions to be provided by the Utilities Division director. On September 8, 1981, while the hearing officer was on vacation, the final version of the hearing officer's opinion and order was prepared by his staff and submitted to the parties.

Thereafter the attorney general became aware of the above-described ex parte activities and moved to dismiss Tucson Electric's rate application, urging that the ex parte communications between the hearing officer, Tucson Electric's counsel and the Utilities Division director required such dismissal. Upon the filing of the attorney general's motion to dismiss, the Commission's chairman issued a special procedural order which gave all of the parties to the proceedings an opportunity to respond to the motion. After considering the responses, including the response of Southern Arizonans which supported the motion to dismiss, the Commission issued its Decision No. 52523, which declared the recommended opinion and order of the hearing officer void, gave the parties an opportunity to submit additional briefs and proposed opinions and orders, and removed the hearing officer and the Utilities Division director from any further involvement in the proceedings. The Commission, however,

1. While the Commission's Utilities Division staff participated in the hearings as a party for adversarial purposes, it was not a party in the strict sense of the word. *See* A.C.R.R. R–14–3–103.

2. The facts alleged in the State's and Southern Arizonans' complaints are virtually identical but do differ on this point. Southern Arizonans' complaint alleges that upon the conclusion of the hearing it was agreed that no party was to submit a proposed opinion and order, but that the hearing officer would draft a recommended opinion and order to be submitted to the parties and they would then have the right to file objections. This difference between the allegations in the State's complaint and Southern Arizonans' complaint is not material for the purposes of this opinion.

refused to dismiss Tucson Electric's pending rate application.[3]

The proceedings continued before the Commission, eventually resulting in the issuance of the Commission's Rate Decision No. 52632. The Commission's Rate Decision was substantially less favorable to Tucson Electric than that which had been recommended by the hearing officer or by the Commission's own staff. The issues involved in these consolidated appeals do not involve any attack on the rates allowed in the Commission's final decision. Rather, the issues relate solely to whether the Commission erred in refusing to dismiss the rate application on the attorney general's motion after the ex parte communications were brought to its attention.

After the entry of the Commission's decision, the attorney general, acting on behalf of the State, and Southern Arizonans, filed separate complaints in the superior court pursuant to A.R.S. § 40–254 naming the Commission and Tucson Electric as defendants and contending that because the ex parte communications constituted fraud on the Commission, the Commission had no discretion and was required to dismiss Tucson Electric's rate application as a matter of law.[4] After the superior court actions were consolidated, motions for judgment on the pleadings were filed by the Commission and Tucson Electric. The trial court granted judgment in their favor on the ex parte communications claims in the complaints, and the appellants have appealed to this court from that judgment.

As previously stated, appellants' primary contention is that because of the improper ex parte communications found by the Commission and alleged in their complaints, the Commission was required as a matter of law to dismiss Tucson Electric's rate application with the result that Tucson Electric would be required to file a new application and commence the rate proceedings *ab initio.* Accordingly, appellants contend that the Commission acted arbitrarily and unreasonably, and abused its discretion when it took the action set forth in its Decision No. 52523 and allowed the rate proceedings to continue to a decision on the merits.

■ In response, the Commission first urges that in exercising its rate-making function the Commission acts in a legislative capacity, and that judicial review is accordingly limited to insuring that the *product* of that legislative process is such as to comport with constitutional requirements. A corollary of this contention is that the *process and procedures* by which the Commission arrives at its decision in rate proceedings is beyond the proper scope of judicial inquiry. In making this contention the Commission, relying on *Allen v. State,* 14 Ariz. 458, 130 P. 1114 (1913), attempts to analogize its constitutionally delegated rate-making function to the legislative process engaged in by the legislative branch of Arizona's government. In our opinion the attempted comparison is constitutionally unsound. While the Arizona courts (and courts of various other jurisdictions) have at times characterized agency rate-making decisions as legislative in nature in the sense that these decisions are intended for the governance of future conduct and rights rather than as an adjudication of previously established rights,[5] we find no authority which purports to extend to rate-making agencies the same freedom from judicial scrutiny and review as is generally accorded to the processes involved in the legislative branch of government.

In our opinion the rate-making function of the Commission has varying aspects. While the rate decision itself is correctly

---

3. Because of its importance to the issues presented, the entire text of the Commission's Decision No. 52523 is attached as an appendix to this opinion.

4. Intervenor-appellee Southwest Gas Corporation was allowed to intervene in the superior court proceedings and has appeared in this appeal, essentially in support of the actions taken by the Commission.

5. *See, e.g., Arizona Corporation Commission v. Superior Court,* 107 Ariz. 24, 480 P.2d 988 (1971); *State v. Tucson Gas, Electric Light & Power Co.,* 15 Ariz. 294, 138 P. 781 (1914).

characterized as legislative in nature, the process and procedures through which the Commission gathers and considers information or evidence leading to that decision through its hearings is quasi-judicial in character, and cannot be analogized to the legislative process preceding the enacting of legislation by the legislative branch of our government.

In *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed.2d 1288 (1936) the United States Supreme Court recognized the mixed character of the rate-making function in proceedings before federal agencies, which in essence serve the same function as Arizona's Corporation Commission in determining and fixing rates:

> "The proceeding is not one of ordinary administration, conformable to the standards governing duties of a purely executive character. It is a proceeding looking to legislative action in the fixing of rates of market agencies. And, while the order is legislative and gives to the proceeding its distinctive character [citations omitted] it is a proceeding which by virtue of the authority conferred has special attributes.

> \*   \*   \*   \*   \*   \*

> "It is a [proceeding] which carries with it fundamental procedural requirements. There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact. Nothing can be treated as evidence which is not introduced as such. [Citations omitted]. Facts and circumstances which ought to be considered must not be excluded. Facts and circumstances must not be considered which should not legally influence the conclusion. Findings based on the evidence must embrace the basic facts which are needed to sustain the order. [Citations omitted].

> "A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence it is frequent-

ly described as a proceeding of a *quasi-judicial* character. The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument.

> \*   \*   \*   \*   \*   \*

> "That duty cannot be performed by one who has not considered [the] evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge."

298 U.S. 480–81, 56 S.Ct. 911–12 (emphasis in original).

*See also, Ohio Bell Telephone Co. v. Public Utilities Comission,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed.2d 1093 (1937); *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed.2d 1033 (1936).

The Commission recognizes the validity of the general principle that agency proceedings leading to rate decisions are quasi-judicial in nature and thus subject to judicial scrutiny and review relating to compliance with statutory requirements and constitutional due process standards. The Commission contends, however, that these principles are not applicable to it because it is a constitutionally created body, unlike the legislatively created agencies referred to in the above-cited decisions. Although the Arizona Corporation Commission has at times been referred to in Arizona as the fourth branch of government, we find no validity in the Commission's contention that its constitutional genesis gives rise to the claimed complete procedural autonomy in rate proceedings, free from legislative control or judicial scrutiny and review. In fact, the legislature's right to control and the right to judicial review of

the Commission's rate proceedings are expressly set forth in Arizona's constitution. Thus, art. 15, § 6 of the Arizona Constitution authorizes the legislature to regulate the procedural aspects of Commission rate proceedings as follows:

"The law-making power ... may prescribe rules and regulations to govern proceedings instituted by and before [the Commission]...."

The legislature has exercised this constitutionally delegated power through the enactment of statutes such as A.R.S. §§ 40–251 and 40–253, as well as by making Arizona's administrative procedure act applicable to commissions created by constitutional provisions. Any doubt as to whether the act was intended to apply to commissions involved in the making of rate-making decisions is removed by expressly including rate-making within the statutory definition of "contested case". *See* A.R.S. § 41–1001 et seq.

Additionally, art. 15, § 17 of the Arizona Constitution expressly precludes any implication that by reason of the Commission's status as a constitutionally created body, its decisions are final and not subject to judicial review upon appeal to the judicial branch.[6] The legislature has implemented this right of appeal through the enactment of A.R.S. § 40–254.

We therefore reject the Commission's contention that its status as a constitutionally created agency serves as a basis for distinguishing the many authorities holding that even though an agency rate decision is of a legislative character, the proceedings leading to that decision are quasi-judicial in nature and therefore subject to judicial review for compliance with constitutional or legislatively imposed requirements and compliance with general due process standards governing quasi-judicial proceedings.

The quasi-judicial nature of contested proceedings before the Arizona Corporation Commission has been recognized by this court in *Western Gillette, Inc. v. Arizona Corp. Comm'n.*, 121 Ariz. 541, 592 P.2d 375 (App.1979). *Western Gillette* involved an appeal from a Commission order approving rates for the transportation of petroleum products. One of the issues involved in the rate proceeding was whether the rate applicant had the authority under its certificate of convenience and necessity to carry such products. On appeal, this court did not reach the merits of the Commission's decision, but rather reversed and remanded the matter for further proceedings before the Commission because of "flagrantly improper ex parte communication" between the rate applicant's counsel and the Commission staff concerning proposed forms for the Commission's decision. In arriving at its decision, this court reasoned that the proceeding before the Commission was a quasi-judicial adjudicatory proceeding and that the ex parte participation in the actual decision-making process by only one of the parties to the controversy was contrary to notions of fairness which underlie the due process of law.

The Commission argues that *Gillette* is distinguishable since the underlying issue in *Gillette* related to the validity of a certificate of convenience and necessity while the instant appeal involves rate-making only, a distinctly legislative function. For the reasons previously stated in this decision, we find no validity in this distinction. While the issue presented in the proceedings may have been different, the process involved in both proceedings was quasi-judicial in nature, thereby justifying the application of basic due process standards in subsequent judicial review of those proceedings.

*Arizona Corporation Commission v. Superior Court, supra,* relied upon by the Commission, does not require a contrary result. Although the soundness of the

---

6. "§ 17. Appeal to courts

"Section 17. Nothing herein shall be construed as denying to public service corporations the right of appeal to the courts of the State from the rules, regulations, orders, or decrees fixed by the Corporation Commission, but the rules, regulations, orders, or decrees so fixed shall remain in force pending the decision of the courts."

court's reasoning in that decision might be subject to question, the essential holding was that the Commission's final decision in a rate-making proceeding is legislative in nature and not subject to special action review. In reaching this limited holding, the Arizona Supreme Court did not consider whether because of procedural limitations imposed by law, the process involved in arriving at a rate decision could appropriately be classified as quasi-judicial in nature. The Commission's reliance on *State v. Tucson Gas, Electric Light & Power Co.*, 15 Ariz. 294, 138 P. 781 (1914) and *Ethington v. Wright*, 66 Ariz. 382, 189 P.2d 209 (1948) is also misplaced. These decisions involve statutes enacted by the legislature which attempt to usurp powers expressly and exclusively given to the legislature by art. 15, §§ 3 and 14 of the Arizona Constitution.

■ In summary, we hold that in a rate-making proceeding the process by which the Commission gathers evidence through evidentiary hearings and reaches its ultimate decision is quasi-judicial in nature and therefore subject to judicial review.

■ We next consider appellants' contention that the doctrine of fraud on the court is applicable to the Commission's proceedings and that therefore the Commission should have dismissed the rate application when the "fraud" was brought to its attention by the attorney general's motion to dismiss. Fraud on the court is defined as that species of fraud which constitutes an attempt to defile the court itself, or is a fraud perpetuated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication. 7 J. Moore, Moore's Federal Practice Para. 60.33 at 60–360 (2d Ed.1983). The doctrine of fraud upon the court has been applied to judicial proceedings involving ex parte communications with a judge or where a judge has relinquished his decision-making power to one of the parties. *See Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514 (3rd Cir.1948); *Ensminger v. Powers*, 108 U.S. 292, 2 S.Ct.

643, 27 L.Ed. 732 (1883). *See also Jemez Properties, Inc. v. Lucero*, 94 N.M. 181, 608 P.2d 157, 160 n. 1 (App.1979); 7 J. Moore, *Federal Practice* Para. 60.33 at 60–360. Although we have not been cited to any Arizona decisions which have discussed the doctrine of fraud on the court in the context of ex parte communications in court proceedings, this court, discussing ex parte communications in rate proceedings before the Arizona Corporation Commission, observed as follows:

"The participation in the actual decision making process by only one party to a controversy is inimical to the notions of fairness which underlie the due process of law. The United States Supreme Court has categorically stated that a 'fair hearing' is denied in quasi-judicial administrative proceedings when the finder of fact reaches his decision after ex parte communications from one side."

*Western Gillette*, 121 Ariz. at 542–43, 592 P.2d at 376–77.

Thus, whether stated in terms of "fraud upon the court" or in terms of "notions of fairness" or the right to a "fair hearing", it is apparent that a party's right to due process is violated when the agency decision-maker improperly allows ex parte communications from one of the parties to the controversy.

■ We now proceed to determine whether the Commission acted within its discretion in dealing with the ex parte communications here involved, or whether, as urged by appellants, the Commission had no discretion and dismissal of Tucson Electric's rate application was required as a matter of law. In urging that dismissal was the only available remedy, appellants rely primarily on three decisions: *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *General Excavator Co. v. Keystone Driller Co.*, 62 F.2d 48 (6th Cir.1932); and *Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514 (3rd Cir.1948). Although these decisions do furnish some support for appellants' arguments, in our opinion they do not mandate an inflexible per se rule of

dismissal when ex parte contacts occur between a party to the proceeding and a judicial officer. Indeed, these courts indicate that the doctrine of fraud on the court is a judicially devised equitable doctrine, the application of which is dependent on the facts of the case. *See also, Matter of Adoption of Hadtrath*, 121 Ariz. 606, 610, 592 P.2d 1262, 1266 (1979) (doctrine of fraud on the court provides equitable relief); *In re Adoption of Frantz*, 21 Ariz. App. 36, 515 P.2d 333 (1973) (equitable defense of laches applied where plaintiff maintained an independent action to set aside judgment). In *Hazel-Atlas* the court noted that:

"Equitable relief against fraudulent judgments is not of statutory creation. It is a judicially devised remedy fashioned to relieve hardships which, from time to time, arise from a hard and fast adherence to another court-made rule, the general rule that judgments should not be disturbed after the term of their entry has expired. Created to avert the evils of archaic rigidity, this equitable procedure has always been characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations."

322 U.S. at 248, 64 S.Ct. at 1002

*Keystone Driller*, relied on by appellants, in its discussion of the doctrine of fraud on the courts noted that the court was:

"[N]ot bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." 290 U.S. 240 at 245–46, 54 S.Ct. 146 at 148, 78 L.Ed. 293 (1933)

Furthermore, in *Teleprompter Cable Systems, Inc. v. FCC*, 543 F.2d 1379 (D.C.Cir. 1976) the court rejected the notion that *Root Refining* and its progeny stood for a per se rule stating that:

"[T]he Commission apparently rests its entire argument upon its interpretation of the *Root Refining* doctrine as a *per se* rule of disqualification. We do not interpret it as such, especially when applied to

a predominantly legislative, rather than judicial, proceeding. . . ." 543 F.2d at 1386.

■ We conclude that the Commission is not deprived of discretion. It does not have a duty to dismiss a rate application any time improper ex parte communications which can be characterized as constituting fraud on the Commission occur between a Commission hearing officer and a party to the proceeding. Rather, the Commission has discretion in dealing with any defilement or corruption of the quasi-judicial process that may arise. Under appropriate circumstances it may fashion remedies less drastic than dismissal, which will accord to all parties the fairness essential to fundamental notions of due process, while at the same time preserving the integrity of the adjudicative body, considering the interests of that body and the duties imposed upon it. *Cf. Sangamon Valley Television Corp. v. United States*, 269 F.2d 221 (D.C.Cir.1959); *Pillsbury Co. v. Federal Trade Commission*, 354 F.2d 952 (5th Cir.1966); *Teleprompter Cable Systems, supra*. Since the Commission does serve, in part, a quasi-legislative function, it is appropriate to defer to the Commission's fashioning of remedial measures which it deems will best vindicate its procedures and processes, in the absence of a showing of an abuse of discretion. While appellants urge that the only way to maintain the integrity and effectiveness of the Commission's adjudicatory process and the public confidence therein was to dismiss Tucson Electric's rate application, we cannot say as a matter of law that the Commission abused its discretion in rejecting that remedy and fashioning another remedy which in its opinion was consistent with fulfilling its constitutionally delegated duties. We therefore hold that the Commission did not abuse its discretion in refusing to dismiss Tucson Electric's rate application.

■ As a final issue, appellants contend that even if this court concludes that the trial court correctly found that the Commission was not required to dismiss the

rate application based upon the ex parte communications revealed in the Commission proceedings and alleged in their superior court complaints, nevertheless the trial court erred in entering judgment on the pleadings because appellants had not had the opportunity to complete their discovery efforts. Appellants urge that they had the right to develop additional facts relating to the possibility of other improper ex parte contacts to demonstrate an abuse of discretion on the part of the Commission. In this connection they urge that they should have been given the opportunity to explore and develop any ex parte contacts that the commissioners themselves might have had with the parties involved in the proceedings.

In reviewing the appellants' complaints to determine whether judgment on the pleadings should have been granted for the defendants, the facts presented in the pleadings and any reasonable inferences to be drawn from those facts must be considered in a light most favorable to the appellants. *See Veach v. City of Phoenix*, 102 Ariz. 195, 427 P.2d 335 (1967); *Bates v. Bates*, 1 Ariz.App. 165, 400 P.2d 593 (1965). With respect to their ex parte communications claims, appellants' complaints alleged that certain ex parte contacts occurred between three specific individuals: the hearing officer, Tucson Electric's counsel and the Director of the Commission's Utilities Division. Thus, it must be taken as true that ex parte contacts did occur between these three individuals and inferences must be drawn that the contacts did influence the hearing officer in the decision-making process. However, as to any other potential ex parte contacts between individual commissioners and any of the parties, we note a complete absence of any allegations in the complaints that such contacts occurred or may have occurred. There were no general allegations of ex parte contacts in the complaints from which the trial judge could have considered that appellants

were relying on contacts other than those specifically pled. In fact, in reviewing appellants' written responses to the Commission's and Tucson Electric's motions for judgment on the pleadings filed in the trial court we note that no argument was made by appellants that judgment on the pleadings should not be granted because discovery was incomplete, nor was any request made by either of the appellants for permission to file an amended complaint alleging fraud on the court in more general terms or in specifics relating to the individual commissioners. Rather, both appellants affirmatively urged that the trial judge was bound by the factual allegations of their complaints, and that those specific factual allegations precluded the granting of the motions for judgment on the pleadings. It was not until the State filed its motion for new trial that the State first attacked the granting of the motions for judgment on the pleadings upon the basis that the State should have been allowed to proceed with discovery and ascertain whether the individual commissioners had been engaged in improper ex parte communications with any of the parties.[7] There is nothing in the record on appeal indicating that Southern Arizonans ever presented this argument to the trial judge in opposition to the motions for judgment on the pleadings.

In conclusion, since appellants limited their pleading of the facts to contacts between specific individuals, they cannot now rely on additional facts that are outside the scope of the pleadings, especially in the absence of any attempt to amend those pleadings.

■ We next consider the issues raised in Southern Arizonans' appeal from the trial court's order assessing deposition costs against the appellants. Southern Arizonans raise three issues in contesting the awarding of deposition costs to the prevail-

7. Appellants were on notice of appellees' contentions concerning the limited nature of their pleading of the fraud on the court claims. When appellants attempted during the taking of Commissioner McCarthy's deposition to question her concerning any ex parte contacts which she might have participated in, the Commission's counsel objected, stating that such was not material or relevant evidence "under the pleadings as they are written."

ing parties, Tucson Electric, the Commission and Southwest Gas. Southern Arizonans first contend that no deposition costs should have been assessed because none of the depositions were "reasonably necessary" to the assertion of Tucson Electric's and the Commission's motions for judgment on the pleadings. While it is true that none of the depositions were used, or could have been used, in the determination of the motions for judgment on the pleadings, we reject Southern Arizonans' contention that this lack of use precluded the awarding of costs to the successful parties for the expenses involved in taking the depositions.

A.R.S. § 12–341 requires that costs be awarded to the successful party as follows:

"The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law."

Costs which may be recovered in superior court are delineated in A.R.S. § 12–332(A):

"A. Costs in the superior court include:

"1. Fees of officers and witnesses.

"2. *Cost of taking depositions.*

"3. Compensation for referees.

"4. Cost of certified copies of papers or records.

"5. Sums paid a surety company for executing any bond or other obligation therein, not exceeding, however, one per cent on the amount of the liability upon such bond or other obligation during each year it was in force.

"6. Other disbursements made or incurred pursuant to an order or agreement of parties."

(Emphasis added).

■ Notwithstanding the provisions of A.R.S. § 12–332(A)(2), Southern Arizonans cite several federal decisions in support of the proposition that deposition costs are not taxable unless the deposition was reasonably necessary to the successful party's case. It is urged that depositions taken for merely exploratory purposes and used for pre-trial preparation or marshalling background information may not be included as taxable costs. *See Independent Iron Works v. United States Steel Corp.*, 322 F.2d 656 (9th Cir.1963); *Postow v. Oriental Bldg. Ass'n*, 455 F.Supp. 781 (D.C.1978) *aff'd* 627 F.2d 1370 (D.C.Cir.1980); *Emigh v. Tinter*, 108 So.2d 913 (Fla.App.1959). This, however, is not the law in Arizona. Arizona does not follow the "reasonably necessary" standard. In Arizona the cost of taking a deposition is a taxable cost if it was taken in good faith, *White v. Frye*, 27 Ariz. 447, 234 P. 34 (1925), even though the deposition is not used. *O.S. Stapley Co. v. Miller*, 6 Ariz.App. 122, 430 P.2d 701 (1967) vacated on other grounds, 103 Ariz. 506, 447 P.2d 248 (1968).

We reject Southern Arizonans' contention that the Commission and Tucson Electric should have awaited the trial court's ruling on their motions for judgment on the pleadings before proceeding with trial preparation. This litigation was not of an insignificant nature from their standpoint. Insofar as Tucson Electric was concerned, at issue was the validity of a 21.1 million dollar rate increase. There is nothing in the record below to indicate that any of the depositions were not taken in good faith. In fact, out of the ten depositions involved, six were noticed by the appellants. In this case, the depositions which were taken all related to the development of the factual background relating to Southern Arizonans' and the attorney general's claims, and were part of the normal discovery process. As stated above, the fact that the depositions were ultimately not used is not dispositive. We hold that the trial judge did not abuse his discretion in awarding costs for the taking of the depositions.

■ Southern Arizonans next contend that even if the costs of the taking of the depositions are deemed to be taxable against them, the appellees are not entitled to that portion of the deposition costs which is attributable to obtaining a copy of the depositions.

Although not cited by Southern Arizonans in their opening brief, this very issue had been specifically addressed by the Ari-

zona Court of Appeals in *Visco v. First National Bank of Arizona*, 3 Ariz.App. 504, 415 P.2d 902 (1966). In *Visco* the court held that the taxation of costs for copies of depositions was within the sound discretion of the trial court, as an incidental expense of the taking of the deposition, stating:

> "The cost of copies of depositions is not specifically disallowed by A.R.S. Sec. 12–332 and is a matter within the sound discretion of the trial court, no less than was 'travel expenses' allowed for the purpose of taking deposition, it being a cost incidental to the taking of the deposition. *Young's Market Co. v. Laue*, 60 Ariz. 512, 141 P.2d 522 (1943). The rationale for the approval of such costs under A.R.S. Sec. 12–332 is adequately set forth in *United States v. Kolesar*, 313 F.2d 835, 840 (5th Cir.1963), as follows:
>
> 'Effective cross-examination of witnesses frequently rests on availability of pretrial depositions either of that witness or other witnesses. This, as all lawyers—and lawyers-turned-judges—know is not a spur of the moment bit of legal forensics. Like the rest of successful trial advocacy, it depends on preparation. Preparation means selection and that means mechanical aids such as checks, underscoring, marginal notes, and the like. Such liberties can hardly be permitted with the one and only original deposition in the official court files.' "

3 Ariz.App. at 508–09, 415 P.2d 902

Although the *Visco* court did not discuss the provisions of A.R.S. § 12–333 in arriving at its conclusions, we are bound by its determination unless we are convinced that its determination was clearly erroneous.[8] *See Scappaticci v. Southwest Savings &* *Loan Ass'n*, 135 Ariz. 456, 662 P.2d 131 (1983). In reviewing the provisions of A.R.S. § 12–333, we note that the exception to taxable costs set forth in the statute does not expressly refer to depositions and could be interpreted as applying only to the cost of copies of papers or pleadings in the court file obtained from the clerk of the court. On the other hand, A.R.S. § 12–332(A)(2) expressly allows the taxation of costs involved in "taking depositions", and, as the *Visco* court reasons, the cost of a copy of the deposition can be considered as incidental to the taking of the deposition. While Southern Arizonans' arguments relating to the applicability of § 12–333 give us some concern, we are not convinced that the prior decision of this court in *Visco* was totally erroneous. We therefore reject Southern Arizonans' contention that costs incurred in obtaining a copy of a deposition are not within the provisions of A.R.S. § 12–332(A)(2).[9]

Southern Arizonans' final contention is that the trial judge erred in assessing the entire amount of deposition costs against both Southern Arizonans and the State, jointly and severally. Southern Arizonans contend that the costs should have been apportioned between Southern Arizonans and the State based on each party's individual responsibility for the creation of costs. Southern Arizonans argue that allocation is required since Southern Arizonans and the State filed separate complaints in different actions, filed separate legal memoranda and presented separate oral arguments and conducted separate discovery. We disagree. We first note that the Arizona statutes and rules relating to costs do not address this issue. Although not directly in point, in *Welch v. McClure*, 123

---

8. A.R.S. § 12–333 provides:

"A copy of a paper not required by law to be copied shall not be allowed and taxed as costs. If a party or attorney takes out copies of any pleadings or papers in an action, it shall be at his own expense, and a charge for the copies shall not be allowed as costs."

9. Southern Arizonans also contended that the allowance of the court reporter's charge of $1.20 per page for deposition copies constituted an abuse of discretion on the part of the trial judge. It is uncontroverted however, that the appellees actually paid this amount to the court reporter, and Southern Arizonans did not introduce any evidence in the trial court as to the unreasonableness of the charge or as to what would be a reasonable charge. We therefore refuse to consider this aspect of Southern Arizonans' argument.

Ariz. 161, 598 P.2d 980 (1979), the Arizona Supreme Court applied the general rule that total costs are not to be apportioned but are to be taxed jointly and severally against all defendants jointly and severally liable. We have not found any Arizona authority which discusses the question of apportionment of taxable costs between unsuccessful plaintiffs. Turning to other jurisdictions, in *Stepanov v. Gavrilovich*, 594 P.2d 30 (Alaska 1979), the court held that where the plaintiffs had moved to consolidate their actions because the actions involved the same issues, were against the same parties and alleged the same claims, they should jointly and severally bear the costs incurred in defending their united claims. In *Karrick v. Edes*, 19 F.2d 693 (D.C.Cir.1927), several plaintiffs united in bringing an action that they ultimately lost. The court noted that the various cases contained certain fundamental questions which affected all of the complainants, and in holding that the costs could be taxed against the plaintiffs jointly and severally the court stated:

> "It is familiar law that, where several plaintiffs unite in bringing an action, costs may be taxed against all of them and recovery had against any of them. *Barrett v. Foley* et al., (Court of Chancery of New Jersey) 17 A. 687; 15 C.J. 101, 102. One judgment debtor, who has paid the costs may have contribution against the others."

19 F.2d at 695. *See also* 20 C.J.S. Costs, § 111 at 353 (1940).

In a consent motion filed in the trial court Southern Arizonans agreed to a consolidation of Cause Nos. C–449448, C–450110, C–452882 and C–452233 for all purposes. The State's and Southern Arizonans' complaints arose out of the same proceeding before the Commission and both were based on allegations relating to the same ex parte contacts and the same claim of fraud. They thus involved the same issues of law and fact. Under these circumstances we hold that the trial judge did not abuse his discretion in refusing to apportion the costs and in holding the plaintiffs jointly and severally liable for costs.

Both Tucson Electric and the Commission have requested that we assess damages against Southern Arizonans pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure, 17A, A.R.S., for a frivolous appeal insofar as concerns Southern Arizonans' appeal from the trial court's order assessing costs. Although we have determined that Southern Arizonans' appeal does not merit relief, we do not find it frivolous or taken solely for the purposes of delay within the meaning of the authorities construing Rule 25. *See generally, Price v. Price*, 134 Ariz. 112, 654 P.2d 46 (App.1982). Accordingly, the request for damages for a frivolous appeal are denied.

The trial court's granting of the motions for judgment on the pleadings and its order awarding costs are affirmed.

GRANT, P.J., and EUBANK, J., concur.

## APPENDIX

### DECISION NO. <u>52523</u>

### [CAPTION OMITTED]

On September 21, 1981, this Commission received a document entitled "Staff Counsel's Motion to Dismiss". Essentially, this motion alleged that certain actions had occurred in this proceeding which constituted improper ex parte contacts and which had denied parties to this proceeding their due process rights.

Immediately, the Commission, through its Chairman, issued its special procedural order No. 52477 which, *inter alia*, removed temporarily the hearing officer assigned to the matter from any further participation in it and directed all parties who desired to do so to file responses to the motion on or before September 30, 1981. This Commission also retained independent legal counsel to assist it in reviewing the motion, the responses and the various matters raised therein.

Written responses were received from the following parties:

APPENDIX—Continued

1. Tucson Electric Power Company (TEP or the Company)
2. The City of Tucson (Tucson)
3. Southwest Gas Corporation (Southwest)
4. The Arizona Community Action Association/Southern Arizonans for Fair Energy Rates (ACAA)

On October 1, the staff counsel also filed a reply to TEP's response to the motion to dismiss.

In our opinion, sufficient facts are uncontested in these pleadings to establish that there was improper ex parte communication among the presiding hearing officer, the counsel for the company and the director of the utilities division. In its response, TEP counsel admits that "[H]e caused a draft of an opinion and order to be prepared and delivered to Mr. Neill Dimmick, Director of Utilities, which set forth the position favored by Mr. Dimmick in this matter." In its original motion to dismiss, the attorneys for our utilities division staff admitted that the Director caused this order to be transmitted to the hearing officer. At a minimum, this routing procedure of the order has denied other participants to this proceeding due process and this constitutes a violation of A.C.R.R. R14–3–104.F.1, R14–3–104.D and R14–3–107.

Further, it is clear that this chain of events was and is proscribed by the holding of the Arizona Court of Appeals in *Western Gillette Inc. v. Arizona Corporation Commission*, 121 Ariz. 541, 592 P.2d 375 (App., 1979). As was stated in that case:

> The participation in the actual decision-making process by only one party to a controversy is inimical to the notions of fairness which underlie the due process of law. The United States Supreme Court has categorically stated that a 'fair hearing' is denied in quasi-judicial administrative proceedings when the finder of fact reaches his decision after ex parte communications from one side. 121 Ariz. at 542–543 [592 P.2d 375]

In the instant case, it is clear that our staff, which serves as a party in this quasi-judicial proceeding and, through it, the Company were accorded input into the decision-making process which other parties did not enjoy. *This Commission cannot and will not countenance ex parte contacts and will, whenever such information is called to its attention, take appropriate steps to remedy the situation so that the integrity of our decision-making process will be ensured.* Therefore, it is clear that, on the basis of the pleadings which we have received, this Commission must undertake steps to negate the advantage which certain parties have received over others and to insure that all parties' views in this proceeding will receive a full and complete airing.

The first step which we undertake in such process is mandated by the Court of Appeals opinion in *Western Gillette:*

> While we do not reach the other issues raised on appeal, we are aware that our decision may result in further proceedings before the Corporation Commission. In such proceedings, we believe that, at the very least, *the staff involved in the preparation of the Commission's previous decision in this matter should be disqualified from any participation.* 121 Ariz. at 543 [592 P.2d 375] (Emphasis added)

In light of the foregoing, Mr. Dimmick and Mr. Meier are instructed to have no further involvement in, at a minimum, Phase I of the instant proceeding.

Similarly, the proposed opinion and order which was forwarded by the hearing officer for our consideration on September 8, 1981, is hereby declared to be null and void and of no further effect in the record. The Commission itself will now assume control of the decision-making process from this point until a final decision is rendered. The parties may rest assured that the Commission will no longer give any weight to this proposed opinion and order. Our decision in this regard, however, shall not constitute a limitation on any of the parties to make whatever arguments or urge whatever positions are deemed relevant and otherwise appropriate.

APPENDIX—Continued

To assist us in conducting our review of the record as well as our ultimate disposition of this cause, the executive secretary should undertake to engage independent legal counsel.

Furthermore, all parties to this proceeding are hereby given to and including October 16, 1981, in which to file (1) any additional briefs which they feel are needed and (2) proposed opinions and orders. Further, at 10:00 A.M., on October 26, 1981, this Commission will hold oral argument on all materials filed by all parties and will thereafter reach its decision on the instant matter.

We assure the parties that, with the assistance of our counsel, we will review all materials which have been placed into the record to date. Therefore, if any party feels that its position has been adequately established already in the briefing stage then that party may rest assured that the input which it has provided to the record will receive full and fair deliberation. In the briefs which the parties may file along with proposed opinions and orders, the parties should direct our attention to any specific areas of the record which they feel require either (1) our particular attention or (2) our review of any rulings by the hearing officer. In relation to the second item, the briefs should also set forth specifically what ruling and/or other remedy which is requested in relation to any portions of the record so highlighted.

We would note that we have not taken the step, which one intervenor alluded to as somewhat "draconian", of dismissing the entire rate proceeding. We do not feel that dismissal is necessary, as a matter of law, to cure the ex parte contact which has taken place at the hearing officer level of our decision-making process. Further, we are inclined to agree with Southwest Gas that dismissal of the case in its entirety at great expense to both the public and the parties would be in the interest of neither one. Many months, many man-hours, and many dollars have been invested in this rate proceeding to date. In our opinion the negation of such investment would not be in the public's interest, since we are confident that the procedure which we have outlined herein, including the ability of the parties to call to our attention specific areas of the hearing transcript where it is felt that errors were committed, is sufficient to insure the integrity of our decisional process as well as the due process rights of all parties.

We would note that ACAA has called to our attention a line of case authority which provides that an agency may not proceed under certain circumstances on a record if it is deprived of the input of a person who has had the opportunity to view personally the demeanor and credibility of the witnesses. ACAA might be in a better position to argue such a conclusion if, in fact, it had presented any live expert testimony at the time of the hearing. In fact, it did not; all parties having stipulated that the testimony of Ben Johnson on behalf of both Tucson and ACAA might be submitted directly into the record and all parties waived cross-examination.

Further, we would note that the point raised by intervenor ACAA is somewhat difficult to consider in the abstract. While it is true that witness demeanor and credibility play a part in a rate case, it is equally true that on a particular record or on a particular issue these judgments may not play any or a very large role. For this reason, we would ask ACAA to direct us specifically to any areas of the record in which it is felt that credibility determinations are particularly important to our resolution of this case.

We also note that all three of the Commissioners attended a substantial portion of the hearing, even though admittedly they did not attend all of it. However, employees of our Tucson office were in attendance at all times, and, if critical, any Commissioner could draw upon their observations should credibility resolutions become necessary. For these and other reasons, the Commission feels that based on the record to date a complete dismissal of the rate case is not required by law nor mandated in fairness to all parties.

APPENDIX—Continued

Insofar as the Motion to Dismiss is inconsistent with the discussion contained or relief granted herein, it is denied. The above constitutes the findings of fact and conclusions of law of the Commission.

NOW, WHEREFORE, IT IS ORDERED:

1. The proposed opinion and order of the hearing officer forwarded September 8, 1981, is declared to be void and of no further force and effect.

2. Hearing Officer Joseph Meier and Utilities Division Director Neill Dimmick are hereby directed to have no further involvement with, at a minimum, Phase I of the instant proceeding.

3. All parties are hereby given the opportunity to submit additional briefs and/or proposed opinions and orders on or before October 16, 1981.

4. The executive secretary is hereby instructed to engage independent legal counsel to assist the Commission in reaching a determination on the merits of this matter.

5. On October 26, 1981, at 10:00 A.M., at the Commission's Hearing Room No. 1, 1200 West Washington, this Commission will conduct oral argument at which time all parties may appear through counsel and will be given the opportunity to be heard.

6. This order is hereby declared to be effective immediately.

BY ORDER OF THE ARIZONA CORPORATION COMMISSION

[SIGNATURES AND ATTESTATION OMITTED]