139 Ariz. 509 (1983)
679 P.2d 532
Walter H. SCHMIDT, Plaintiff/Appellee,
v.
AMERICAN LEASCO, an Arizona corporation, Defendant/Appellant.
No. 2 CA-CIV 4825.
Court of Appeals of Arizona, Division 2.
December 15, 1983.
Rehearing Denied January 11, 1984.
Review Denied April 10, 1984.
*510 DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C. by David C. Anson, Tucson, for plaintiff/appellee.
Johnson, Dowdall & Payne by Richard J. Dowdall and Daniel H. Parks, Tucson, for defendant/appellant.
OPINION
BIRDSALL, Judge.
This action was brought by Walter H. Schmidt against American Leasco and Jimmy GMC Leasing, Inc., for breach of contract, consumer fraud, and breach of fiduciary duty.
On stipulation of counsel the case was submitted to the jury against the defendant American Leasco only. The jury returned a verdict in favor of the plaintiff and against American Leasco for $12,713 in compensatory damages and $25,000 in punitive damages. A judgment was entered by the court on November 18, 1982.
American Leasco timely filed a motion for judgment notwithstanding the verdict, or alternatively for a new trial. This motion was granted and the compensatory damages were reduced from $12,713 to $5,000. The plaintiff filed a statement accepting total damages of $30,000. However, American Leasco filed its notice of appeal on February 24, 1983. No cross-appeal was filed and we are thus concerned with the judgment as reduced by the trial court. Rule 59(i), Rules of Civil Procedure, 16 A.R.S.
On appeal American Leasco contends there was insufficient evidence to submit the issue of punitive damages to the jury and the compensatory damages award, even as modified, was excessive. We affirm.
The appellee purchased a recreational vehicle (RV) from Jimmy R.V. (now Jimmy GMC of Tucson, Inc.) in July 1977. Subsequently he turned the vehicle over to Jimmy's leasing program to help defray payments subject to an agency agreement between them. He signed the original agreement and two others on three different occasions over a three-year period. The leasing corporation changed its name twice although it continued to operate from the *511 same location. The last agreement was with American Leasco.
The agreement provided that American Leasco would act as the appellee's agent in renting the vehicle to third parties. The appellant agreed to carefully interview each renter and to secure a $100 security deposit for any damage to the vehicle. Appellant was to charge a per day or weekly fee plus an additional fee for mileage. Revenues were to be divided equally between the parties. The appellee remained responsible for maintenance and repairs not caused by renters' neglect or abuse. American Leasco was responsible for oil, lube and other minor maintenance.
During the first two and one-half years that the appellee participated in the program, he used the RV on occasion for family outings. Generally, however, the vehicle remained on the lot, available for rental use. In December 1979 the appellant asked him to temporarily remove his vehicle because storage space was needed on the lot. In January 1980 the appellee received a call from the appellant notifying him that American Leasco wanted again to rent out his vehicle. He returned the RV, then in good repair. At this time, the vehicle's four rear tires were all the same size and bore one-half inch of tread.
In the months that followed, the appellee knew that his vehicle had been rented out at least three times because he received copies of those rental agreements. However, one of the rental agreements reflected a discrepancy in mileage. The vehicle appeared to be "losing miles" according to the reported odometer readings. In addition, the documents indicated that American Leasco had rented the RV without a mileage charge to the last renter. This was in direct violation of the agency agreement. The appellant knew appellee was opposed to this practice because they had previously discussed it.
The appellee inquired specifically about these items. When he received no explanation, he decided to check personally on his vehicle. What he saw on the lot on June 2, 1980, was a vehicle in "deplorable condition". The RV he had returned only six months earlier with six good tires now had four bald rear tires, one of which was undersized, and two bald front tires. Curtain valances were torn and curtains were missing. The sleeping bunk was torn from the wall and the wood fractured. A drawer front was broken away and a cabinet was off its hinges. The refrigerator had been punctured and door parts were missing. Food was caked inside. The immediate list of defects numbered some twenty items. Although twenty percent of the damage noted was normal wear and tear the remaining eighty percent was characterized as "abuse". American Leasco never explained how the damage occurred.
During the time that Schmidt participated in the leasing program, he was charged for repairs that rightfully should have been assessed against the renter's security deposit. No portion of the security deposit from the twenty-four recorded rentals ($2,400) was ever applied for repairs to his vehicle even though the vehicle suffered damage during the rental periods. Instead, the cost was taken from Schmidt's share of the rental profits. Additionally, he was charged for repairs that were never done, including a charge to tow his vehicle from Phoenix to Tucson when, in fact, the vehicle was driven back. The records showing a discrepancy in odometer readings left the inference that there was tampering with the odometer. Further, during the six months from January to June of 1980, only an additional twenty-three hundred miles were recorded on the vehicle, yet the tires were thread bare. Clearly, this vehicle had been used otherwise and its mileage not recorded.
Schmidt removed his vehicle from American Leasco's rental program in June 1980. He put the vehicle in storage because it could not be driven safely to his home in Benson and he could not afford to repair it. At the time of trial the vehicle was still in storage.
The cause of action was within the provisions of the consumer fraud statute because it involved deception, deceptive acts or practices, fraud, false pretense, false promise, misrepresentation or *512 concealment in the sale of services. A.R.S. § 44-1522(A). The definition of "merchandise" in A.R.S. § 44-1521(5) includes "services". See Parks v. Macro-Dynamics, Inc., 121 Ariz. 517, 591 P.2d 1005 (App. 1979).
Compensatory Damages
As we have already observed, the appellant failed to collect security deposits totaling $2,400. The jury could have reasonably concluded the appellee would have had the benefit of some of these payments to use toward repairs. The cost of repairing the vehicle in its condition upon return to the appellee was estimated to be $4,757. Abuse attributable to the neglect of the appellant accounted for 80 percent of this repair cost. These items alone total more than the reduced award of $5,000 without even considering other damage evidence.
Punitive Damages
Punitive damages may properly be awarded a plaintiff who recovers for deceptive practices. Sellinger v. Freeway Mobile Home Sales, Inc., 110 Ariz. 573, 521 P.2d 1119 (1974). Punitive damages may be awarded where the conduct of the wrongdoer is wanton, reckless or shows spite or ill will. Lutfy v. R.D. Roper and Sons Motor Co., 57 Ariz. 495, 115 P.2d 161 (1941), or where there is a reckless indifference to the interests of others. McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625 (1961).
In the instant case the evidence supporting the award of punitive damages included:
(1) rental records of the vehicle were intentionally doctored,
(2) mileage and damages were not reported,
(3) charges were made for repairs not performed, and
(4) the odometer was altered.
Whether to award punitive damages and the amount thereof is within the discretion of the jury. Miscione v. Bishop, 130 Ariz. 371, 636 P.2d 149 (App. 1981). Likewise the amount awarded is within the discretion of that body. Tarnoff v. Jones, 17 Ariz. App. 240, 497 P.2d 60 (1972). We will not disturb such an award unless it is so unreasonable in regard to the circumstances as to show the influence of passion and prejudice. Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966). The trial court refused to reduce the award although it did reduce the compensatory damages. There is no compensatory-punitive damage ratio limit as argued by the appellant. See Nienstedt v. Wetzel, 133 Ariz. 348, 651 P.2d 876 (App. 1982). We cannot say the punitive award was unreasonable.
Affirmed.
HOWARD, C.J., and HATHAWAY, J., concur.