770 P.2d 1180

ASPHALT ENGINEERS, INC., an Arizona corporation; and Kenneth I. Mamode and Winsome E. Mamode, husband and wife, Plaintiffs–Appellees,

v.

Lee GALUSHA and Peggy Galusha, husband and wife, individually and doing business as Lee Galusha, Ltd., Defendants–Appellants.

No. 1 CA–CIV 9814.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 17, 1989.

Review Denied April 25, 1989.

Roger D. Smith, Scottsdale, for plaintiffs-appellees.

Lee Galusha, Ltd. by Lee Galusha, Phoenix, for defendants-appellants.

## OPINION

GERBER, Judge.

This is an appeal from a judgment of legal malpractice. Asphalt Engineers, Inc. and its sole shareholders, Kenneth and

Winsome Mamode, filed suit for breach of contract, negligence, and conversion against Lee and Peggy Galusha, individually and doing business as Lee Galusha, Ltd. (hereinafter Galusha), and against Robert Walston, a former legal assistant in Galusha's office. The trial court directed a verdict in favor of Galusha on the conversion claim. The jury returned a verdict against Galusha for breach of contract and negligence and awarded compensatory damages of $22,491.01, punitive damages of $40,000, and attorney's fees of $13,130 to Asphalt Engineers. Walston is not a party to this appeal.

Three issues are raised. Galusha argues that it was error to submit the case to the jury in the absence of expert testimony on the standard of care of a lawyer, that no evidence supports the compensatory and punitive damages, and that the award of attorney's fees was improper. We find no such errors and affirm the judgment.

## FACTS

In April, 1984, the Mamodes met with Walston at Galusha's office and advised Walston that they wanted to file liens against real property involved in three construction jobs, the Maupin, Gutkin and Spillman projects, for which Asphalt Engineers had not been paid. They also requested that lawsuits foreclosing those liens be filed, if necessary. After agreeing to file the liens and collect the money, Walston requested and received a $250 retainer. At trial Winsome Mamode testified that at the time of these discussions she believed that Walston was an attorney.

Galusha filed a lien against the Spillman project. As a result, Asphalt Engineers' employers on that project paid $5,000 in settlement of the claim to Galusha's office. Galusha deducted $1,204 for attorney's fees plus court costs from the $5,000.00 collected.

In June, 1984, Walston requested and received an additional $400 retainer fee. Although Walston indicated that a lien had been filed on the Maupin and Gutkin projects, no liens were filed nor were any suits instituted to recover the monies,

$2400 and $2800 respectively, which Asphalt Engineers claimed was due on those projects. The time for filing both liens expired.

Sometime after their initial visit and before they discovered that liens had not been filed, the Mamodes returned to Galusha's office and directed Walston to file a lien and foreclose against the "Northern project" for which $13,000 was owed them. No lien was filed. The Mamodes also left an $1100 two-party check made out to "Asphalt Engineers" and Marty Pellegrino" with Walston with the understanding that Walston would deliver it to Pellegrino. Instead of being delivered to Pellegrino, the check was retained in the Mamodes' file in Galusha's office with "void" written on various portions of it. At trial Walston acknowledged that he had written "void" on the check but contended that he had done so at the direction of the Mamodes. The Mamodes denied directing Walston to void the check.

Pellegrino subsequently brought suit against the Mamodes, who brought a copy of the complaint to Galusha's office with the request that the check be given to Pellegrino. The check was not delivered. Although the issue was disputed at trial, there is evidence in the record that Galusha's office assumed responsibility for responding to the lawsuit. However, no answer was filed to the complaint. The result was that Asphalt Engineers suffered a default judgment in the amount of $1,635. After repeated efforts to contact Galusha and Walston, the Mamodes filed this lawsuit.

## EXPERT TESTIMONY

Galusha first argues that the trial court committed reversible error by submitting the issues of breach of contract and negligence to the jury in the absence of expert testimony that he had deviated from the standard of care for an attorney.

Although expert testimony is generally required to establish the standard of care in a professional malpractice action, it is not necessary where the negligence is so

grossly apparent that a lay person would have no difficulty recognizing it. *Cf. Riedisser v. Nelson,* 111 Ariz. 542, 544, 534 P.2d 1052, 1056 (1975); *Peacock v. Samaritan Health Service,* 159 Ariz. 123, 765 P.2d 525 (Ct.App.1988). Asphalt Engineers asserts that the negligence shown was obvious to a lay person. We agree. The record contains ample evidence of conduct so egregious as to permit finding malpractice even in the absence of expert testimony. Galusha never met with the Mamodes. He permitted Walston, a non-lawyer, to provide them legal advice. He failed to file and foreclose liens. He billed Asphalt Engineers for time spent responding to a complaint that the Mamodes had filed against him with the Better Business Bureau. He accepted the complaint filed against Asphalt Engineers by Pellegrino. He failed to answer the complaint or to inform the Mamodes that he was not handling this case. No expert is needed to interpret this kind of evidence.

■ In addition, expert testimony on the standard of care is generally not required where the plaintiff alleges breach of contract rather than conduct beneath the standard of care. *See generally* R. Mallen and V. Levit, *Legal Malpractice,* § 665 at 841 (2d ed. 1981). There is evidence in the record that Galusha had promised to file liens against certain construction projects and, if necessary, to institute lawsuits foreclosing those liens. Thus the jury could determine even without expert testimony that Galusha breached his contract by failing to perform services which he had promised to perform.

■ Expert testimony is also not required where an accused attorney acknowledges that the alleged conduct constitutes malpractice. *Legal Malpractice, supra,* at 841. Galusha testified, in part, as follows:

Q. And would you say that it wouldn't meet the standard of the profession if, in fact, a client gave an attorney's office the money to perform the service and the attorney's office did not follow through on that?

A. I would say that would not meet the standard, yes.

Q. Would you say that an attorney owes a fiduciary duty to his clients?

A. Yes, and of course, depending on whose interpretation of just what fiduciary means.

Q. And that says as an attorney that employs legal assistants to do work, you have a duty to supervise all aspects of that work?

A. Yes.

Q. And to prevent the legal assistant from actually practicing law?

A. Yes.

Q. And you would have a duty, if a client paid you or your office money to perform a certain service within a certain time limitation, you have a duty to carry out that instruction within that time limitation?

A. If it can be done, yes.

Q. And it would, in fact, be negligence if you missed the time limitations?

A. Well, not necessarily because a lot of times something is discussed and then a different decision is reached, and there's a change of game plan.

Q. In which case you would notify the client that they could not pursue what they, in fact, wanted to pursue?

A. As soon as I had the opportunity, yes. Sometime these things, decisions have to be made without an opportunity.

Expert testimony was unnecessary in light of Galusha's own acknowledgment that the alleged conduct fell below the standard of care. This testimony, coupled with the obvious nature of the negligence and the allegation of complete breach of contract, leads to the conclusion that the trial court properly submitted the issues of breach of contract and negligence to the jury without any expert testimony.

## SUFFICIENCY OF THE EVIDENCE ON DAMAGES

■ A plaintiff in a legal malpractice action must prove that his suit would have been successful if the attorney had not been negligent. *Phillips v. Clancy,* 152 Ariz. 415, 418, 733 P.2d 300, 303 (App. 1986). Galusha argues that the evidence

does not support a finding that Asphalt Engineers would have prevailed on its claims or that, if it had prevailed, the damages would have totaled $22,491.01.

Because an appellate court does not weigh the evidence, we examine the record only to determine whether substantial evidence exists to support the judgment. *Whittemore v. Amator,* 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986). In the record there is substantial evidence that Asphalt Engineers would have prevailed in its claims against various projects and could have avoided a default judgment in the Pellegrino lawsuit but for Galusha's negligence. For example, Galusha's failure to file liens against the Maupin, Gutkin, and Northern projects prevented Asphalt Engineers from recovering the sums owed—$2,400, $2,800, and $13,974.01—for those projects. This evidence alone supports an award of $19,171.01 in compensatory damages.

In addition, the evidence shows that the default judgment against Asphalt Engineers in the Pellegrino lawsuit resulted from Galusha's failure to follow instructions to deliver the check owed to Pellegrino or to file an answer after assuming responsibility for the lawsuit. There is also evidence that Asphalt Engineers paid approximately $1,400 in retainer fees to Galusha for services which were not rendered, and that Asphalt Engineers eventually had to pay another attorney for work that Galusha failed to perform.

The award of $22,491.01 in compensatory damages fairly represents the sum of the monies which Asphalt Engineers was unable to collect on the Maupin, Gutkin, and Northern projects, the default judgment in the Pellegrino lawsuit, and the fees paid to Galusha and the attorney who performed the work not done by Galusha. The evidence amply supports this award.

## PUNITIVE DAMAGES

The trial court gave a jury instruction on punitive damages in accordance with *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986) and *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723

P.2d 675 (1986). The jury was instructed that punitive damages required clear and convincing evidence that Galusha's conduct was aggravated or outrageous and that he intentionally caused Asphalt Engineers to be damaged or pursued a course of action by which he knowingly and consciously disregarded causing a substantial risk of significant harm.

Galusha argues that there was no evidence to justify giving the instruction. We disagree. There is substantial evidence to support the instruction. Galusha's conduct in agreeing to file liens and then failing to do so and then demanding additional money to enforce a lien that he never filed was so aggravated or outrageous as to provide probable cause for criminal charges of theft. The same may be said for Galusha's conduct in billing the Mamodes for his time spent responding to their complaint against him with the Better Business Bureau.

In addition, the jury could easily have found that Galusha either intentionally caused harm to Asphalt Engineers or consciously disregarded a substantial risk of significant harm through his failure to comply with the Mamodes' instruction to release the check owed to Pellegrino and through his conduct in permitting a non-lawyer to supply the only advice given the Mamodes concerning their legal problems.

The record also supports an inference that Galusha attempted to cover-up his misconduct. In the pretrial phase of this litigation, Galusha submitted numerous billing statements in support of his counterclaim against the Mamodes for nonpayment for legal services. The Mamodes did acknowledge receiving several dated statements. However, Galusha also submitted several undated statements which he claimed had also been sent to the Mamodes. Galusha acknowledged that the undated statements were prepared in a different format than the dated statements and included information not normally provided such as detailed recitations of conferences and telephone conversations. Galusha testified as follows:

Q. So isn't it a fact that these other statements were made up after this law-

suit was filed to try to show that things were told to the plaintiff?

A. These may have been—I know for a fact that the first one here was a retype in order to elaborate a little on just what the arrangements were. It may be that these reflect actually a re-typing of what went on in an effort to furnish you with the material that you wanted.

Galusha's acknowledgment that these un-dated statements may have been "retypes" which "elaborate a little" on what occurred cannot be squared with his testimony that those bills were actually sent to the Mam-odes, who denied ever having received them.

In summary, the record supports a con-clusion that Galusha intentionally dis-regarded his clients' rights in an extreme fashion going beyond mere negligence. The instruction on punitive damages had ample support in the record and was not error.

Galusha also argues that the award of punitive damages was improper because there was no evidence of his net worth. However, there is no requirement that spe-cific financial circumstances be presented. A defendant who has not introduced evi-dence of his financial circumstances may not complain of its absence. *Nienstedt v. Wetzel*, 133 Ariz. 348, 357, 651 P.2d 876, 885 (App.1982).

The amount of a punitive damage award is left to the sound discretion of the jury. It will not be disturbed on appeal unless so unreasonable as to be the result of passion. or prejudice. *Schmidt v. American Leas-co*, 139 Ariz. 509, 679 P.2d 532 (App.1983). We find that the $40,000 punitive damages award in the circumstances of this case shows no passion or prejudice.

## ATTORNEY'S FEES

■ In *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987), our supreme court found that A.R.S. § 12–341.01 generally pre-cludes an award of attorney's fees in pro-fessional malpractice cases where the con-tractual relationship is merely an implied-in-law contract created through a legal fic-tion. Where, however, a "special contrac-tual agreement or undertaking" exists, a professional malpractice action may arise from contract rather than tort. *Id.* at 524, 747 P.2d at 1223. Such is the case here. The gravamen of the litigation rests in Galusha's failure to perform services ex-pressly promised under an oral contract.

Galusha concedes that attorney's fees may be awarded for those claims arising out of contract but argues that the fees awarded were excessive in relation to the contract claims. We will not reverse an award of attorney's fees absent a showing of abuse of discretion. *Associated Indem-nity Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985). We find no abuse of discretion and affirm the judg-ment.

Our supreme court has adopted the American Bar Association's 1972 Code of Judicial Conduct. *See* Rule 81, Rules of the Supreme Court, 17A A.R.S.. These seldom-cited rules govern the conduct of judges in the administration of their high office. The Code provides in part that:

A judge should report what he believes clearly to be professional misconduct of a judge or lawyer to the appropriate disci-plinary agency.

Canon 3(B)(3), Code of Judicial Conduct, Rule 81. Accordingly, we are forwarding a copy of this opinion to the State Bar of Arizona for whatever action it deems ap-propriate.

In the exercise of our discretion pursuant to A.R.S. § 12–341.01, we decline to award attorney's fees on appeal.

HAIRE, P.J., and SHELLEY, J., concur.