NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

JOHN KLEE and CATHERINE KLEE, *Plaintiffs/Appellants,*

*v.*

DAVID W. LUNN and GALLAGHER & KENNEDY, P.A.,
*Defendants/Appellees.*

No. 1 CA-CV 13-0060
FILED 03/04/2014

———————————————

Appeal from the Superior Court in Maricopa County
No.  CV 2009-054004
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

———————————————

COUNSEL

The Nathanson Law Firm, Scottsdale
By Philip J. Nathanson
*Counsel for Plaintiffs/Appellants*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Donald Wilson, Jr. and Brian W. Purcell
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

---

**D O W N I E,** Judge:

**¶1**          This appeal arises out of a legal malpractice action filed by John and Catherine Klee[1] against attorney David Lunn and the law firm of Gallagher & Kennedy, P.A. ("G&K") (collectively, "Appellees"). The superior court granted summary judgment to Appellees on the Klees' complaint. It also granted summary judgment to G&K on its counterclaim. We affirm the grant of summary judgment on the malpractice claim but vacate summary judgment on the counterclaim and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY[2]

**¶2**          On December 5, 2005, John Klee, Thomas W. Anderson, and Alan Scott Ferguson ("the Borrowers") borrowed $90,000 from the Robert Nichols Family Trust ("the Trust") and signed a promissory note agreeing to repay $135,000 by March 8, 2006. If the Borrowers did not pay in full by the stated date, late fees would apply, and the note provided for a default interest rate of 18% and recovery of attorneys' fees and costs. Anderson individually signed a second promissory note when he borrowed additional sums from the Trust.

**¶3**          Defaults occurred under both promissory notes. The Trust sued Klee, Anderson, and Ferguson under the first note and Anderson under the second note ("the underlying litigation"). Ferguson settled with the Trust and was dismissed from the lawsuit.

**¶4**          Anderson and Klee consulted with Lunn, who was then an attorney at G&K. Lunn concluded that representing both Anderson and

---

1          References to "Klee" in the singular are to John Klee.

2          We view the facts in the light most favorable to the Klees. *See AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App. 1993).

Klee was permissible because they had co-signed the first note and were jointly and severally liable under it. Lunn advised Anderson and Klee, though, that he would have to withdraw in the future if a conflict of interest arose. Anderson agreed to pay the legal fees and costs for the joint representation.

¶5 Appellees entered an appearance on behalf of the Klees and Anderson in the underlying litigation. The Trust moved for summary judgment. Appellees responded in opposition, arguing that "[a]lthough it is undisputed that certain amounts of principal remain outstanding for each promissory note, the terms of repayment are so unconscionable the total amount owed under the promissory notes is greatly disputed." The superior court granted the Trust's motion for summary judgment "as to every issue raised therein . . . except for the issue of unconscionability which must abide the further development of the record or an evidentiary hearing."

¶6 The parties reached a settlement agreement in July 2008 that required Anderson and the Klees to pay the Trust $95,000. The settlement agreement stated that they were jointly and severally liable and obligated them to pay $47,500 by August 18, 2008, and an additional $47,500 by October 2, 2008. If the required payments were not made, the Trust would be entitled to $200,000, less any payments previously made under the settlement agreement.

¶7 Anderson and the Klees wished to allocate their respective obligations under the settlement agreement. Lunn suggested they sign an agreement setting forth their responsibilities and stating that the failure of one party to make required payments would give the other an indemnity claim. Lunn advised the Klees to consult independent counsel regarding such an agreement. Klee told Lunn that he had done so and wished to proceed with the agreement. The ensuing indemnity agreement required Anderson to remit the first $27,500 of each payment due under the settlement agreement, with the Klees paying the remaining $20,000.

¶8 As the deadline neared for the first settlement payment, G&K attorney Maureen Welsh e-mailed the Klees to remind them of the amount and the due date. However, she mistakenly stated that they owed $17,500 — $2500 less than their actual obligation. Klee sent $17,500 to attorney Welsh. By the time Welsh notified Klee of her error, it was too late for him to obtain additional funds. G&K forwarded $20,000 to the Trust, using $2500 of the firm's funds.

**¶9**   Anderson did not make his required payments under the settlement agreement. Lunn notified the Klees that there was now a conflict of interest between them and Anderson such that G&K could no longer represent them. Appellees later withdrew as counsel from the underlying litigation.

**¶10**   The Trust successfully moved to enforce the settlement agreement. The superior court entered judgment in favor of the Trust and against the Klees and Anderson for $170,000. The Klees retained new counsel, who negotiated a second settlement whereby the Klees agreed to pay the Trust $55,000. The Klees did not fulfill their obligations under that agreement. In November 2011, the Klees entered into a third settlement agreement, this time agreeing to pay the Trust $185,000.

**¶11**   The Klees sued Appellees for legal malpractice. G&K filed a counterclaim, seeking to recover legal fees from the Klees, as well as the $2500 G&K sent to the Trust on the Klees' behalf.

**¶12**   Appellees moved for summary judgment on both the complaint and counterclaim. The superior court granted Appellees' motion, assessed costs of $22,800.11 against the Klees, and entered a signed judgment. The Klees filed a motion to alter, amend, and vacate the judgment under Arizona Rule of Civil Procedure 59, which the court denied.

**¶13**   The Klees timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), -2101(A)(1), and ARCAP 9.

## DISCUSSION

**¶14**   We review a trial court's grant of summary judgment *de novo*. *Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17, 83 P.3d 56, 60 (App. 2004). Summary judgment is appropriate only when "no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 14, 38 P.3d 12, 20 (2002).

**¶15**   A party alleging legal malpractice must establish the four basic elements of negligence: duty, breach of duty, causation, and damages. *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 12, 83 P.3d 26, 29 (2004) (citation omitted). In the case at bar, only the latter two elements — causation and damages — are at issue. Appellees' motion for summary

judgment was "based solely upon the absolute vacuum of proof (1) that any assumed breach of the standard of care was the actual and proximate cause of any injury to [the Klees] and (2) that [the Klees] sustained any damages."

## I. Causation

**¶16**　　　In what is sometimes called the "case within the case" doctrine, the plaintiff in a legal malpractice suit must "prove that but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit." *Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App. 1986); *see also Glaze*, 207 Ariz. at 29, ¶ 12, 83 P.3d at 29 (plaintiff must prove attorney's negligence "was the actual and proximate cause of injury," i.e., that plaintiff would have succeeded in the original action but for the negligence). Expert testimony is generally required in professional negligence cases. *See Asphalt Eng'rs, Inc. v. Galusha*, 160 Ariz. 134, 135, 770 P.2d 1180, 1181 (App. 1989). An exception to this general rule exists "where the negligence is so grossly apparent that a lay person would have no difficulty recognizing it." *Id.* at 135-36, 770 P.2d at 1181-82; *see also Mann v. GTCR Golder Rauner, LLC*, 351 B.R. 685, 703 (D. Ariz. 2006) ("[I]n the absence of specific evidence establishing causation, a claimant must present expert testimony to substantiate the link between the claimed breach and the alleged injury."); 4 Ronald E. Mallen & Jeffery M. Smith, *Legal Malpractice* § 37:24 (2014) ("Expert testimony may be essential for the plaintiff to establish causation. . . . [U]nless the causal link is obvious or can be established by other evidence, expert testimony may be essential to prove what the lawyer should have done.").

**¶17**　　　The Klees contend they settled with the Trust based on Lunn's advice that their unconscionability defense was "very bad." According to the Klees, had Lunn competently defended them, they could have avoided their entire obligation under the promissory note.

**¶18**　　　The causation alleged by the Klees is not so obvious that a lay person could recognize it. The Klees, though, failed to offer any competent evidence of causation. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (To survive summary judgment, the proponent must produce evidence which would allow a reasonable trier of fact to agree with the proponent's conclusion.). In moving for summary judgment, Appellees offered detailed expert opinions from Thomas Zlaket, who stated, *inter alia*:

The unconscionability defense [Appellees] managed to preserve for trial had little or no chance of success, and at most might have caused a reduction in fees, interest and/or penalties. It would not, in my opinion, have eradicated the entire debt. Nonetheless, the lawyers' success on this motion was important in forestalling a judgment and providing an opportunity for the clients to secure a favorable settlement.

¶19 To defeat summary judgment, the Klees were required to come forward with controverting evidence, which they failed to do. Their only expert opinions appear in a preliminary affidavit of Paul Friedman, who states in conclusory fashion that Appellees "did not develop a case for the underlying Defendants' theory that the interest rates of 267% and 400% were unconscionable and, therefore, lost the Motion for Summary Judgment." Not only is Friedman's affidavit factually incorrect (Appellees persuaded the trial court to preserve the unconscionability claim and *defeated* summary judgment on that basis), it does not suggest, let alone establish, that but for a breach of duty, the Klees could have avoided all liability under the promissory note — including the principal sum that they borrowed. *See Phillips*, 152 Ariz. at 418, 733 P.2d at 303. Friedman did nothing to counter Zlaket's specific opinion that the unconscionability defense had "little or no chance of success" and that, at best, the defense could have reduced fees, interest, and/or penalties, not relieved the Klees of all obligations under the note.

¶20 "When the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that an issue exists." *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287, ¶ 14, 17 P.3d 790, 793 (App. 2000). Based on the record before it, the superior court could properly conclude that the Klees failed to proffer causation evidence sufficient to defeat summary judgment on the malpractice claim.

## II.  Damages

¶21 The lack of causation evidence is fatal to the Klees' malpractice claim. But even if they had demonstrated a genuine issue of material fact regarding causation, they failed to establish actual injury or damages.

**¶22** "A claim of legal malpractice requires more than negligence by an attorney; in addition, 'actual injury or damages must be sustained before a cause of action in negligence is generated.'" *Glaze*, 207 Ariz. at 29, ¶ 15, 83 P.3d at 29. A plaintiff must establish both the *fact* of damages attributable to the defendant and the *amount* of damages. "[T]he amount of damages may be established with proof of a lesser degree of certainty than required to establish the fact of damages." *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 184, 680 P.2d 1235, 1245 (App. 1984); *see also Farr v. Transam. Occidental Life Ins. Co. of Cal.*, 145 Ariz. 1, 6, 699 P.2d 376, 381 (App. 1984) ("Speculative or uncertain damages, however, will not support a judgment and proof of the fact of damages must be of a higher order than proof of the extent thereof.").

**¶23** The Klees established neither the fact of damages nor an amount of damages attributable to Appellees' conduct. In responding to a question about damages at his deposition, Klee responded, "until I have consultants' interpretation back and a study done on it, I don't think I can answer that question." In response to a different question regarding damages, he stated, "I'm not an accountant or an economist. And I don't believe I can calculate or make that assessment. . . ." Catherine Klee similarly testified that she had not computed any damages and "wouldn't even know where to begin."[3]

**¶24** Nor did the Klees offer competent evidence of the fact of damages. Their expert's preliminary affidavit makes only passing reference to damages, stating in conclusory fashion that Appellees' "failure to comply with the standards of care and conduct caused the Klees' damages." An expert's conclusory statements are insufficient to defeat summary judgment. *Nolde v. Frankie*, 192 Ariz. 276, 282, ¶ 28, 964 P.2d 477, 483 (1998); *see also Florez v. Sargeant*, 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996) ("[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment."). In contrast, Zlaket's affidavit avowed that the unconscionability defense would *not* have relieved the Klees of their obligation to repay principal sums owing under the promissory note and

---

[3]    The Klees suggest they were damaged because they had to liquidate investments and borrow funds to make payments due under the settlement agreement. The relevant inquiry, though, is whether the Klees were damaged by having to pay more than they would have paid but for the alleged malpractice.

that, as a result, they suffered no damages by entering into the settlement agreement that Appellees negotiated with the Trust.

¶25            The Klees' failure to offer competent evidence of the fact or measure of damages provided an independent basis for granting summary judgment to Appellees on the malpractice claim.

## III.    Counterclaim

¶26            G&K's counterclaim alleges breach of contract and unjust enrichment claims against the Klees.[4]   Lunn and Klee both testified that Anderson agreed to pay G&K's fees and to be financially responsible for the defense of the underlying litigation.   Appellees had no separate retainer agreement with the Klees, as Lunn testified at his deposition:

> Q.    . . . [D]id the firm of Gallagher & Kennedy have a separate attorney representation agreement with John and Catherine Klee?
>
> A.    Not to my knowledge.
>
> Q.    Was there a written representation or retention agreement with Mr. Anderson?
>
> A.    Yes.
>
> Q.    Did that document refer to the Klees?
>
> A.     I believe so.
>
> Q.    Did the Klees sign it?
>
> A.    I don't know.

The record does not include any representation agreement, including the one reportedly signed by Anderson.

---

[4]      Although G&K also asserted a quantum meruit cause of action, "*[q]uantum meruit* is actually a measure of damages, not a remedy. . . .   The claim for relief is for unjust enrichment." *Landi v. Arkules*, 172 Ariz. 126, 135, 835 P.2d 458, 467 (App. 1992).

**¶27** It is undisputed that Anderson failed to pay G&K for its services. Lunn testified that "at some point," Klee said he wanted G&K to continue representing him "and that he would be responsible for their portion of the fees." According to Lunn, Klee confirmed that he would pay G&K in an e-mail message. No such message is in the record, though, and Klee denied under oath ever promising to pay G&K's fees. Similarly, although Lunn testified that Klee agreed to repay the $2500 G&K advanced, Klee testified he never promised to repay G&K, "wasn't billed for it," and "didn't pay it."

**¶28** To prevail on a breach of contract claim, a plaintiff must establish: (1) a contract; (2) breach thereof; and (3) resultant damages. *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.*, 5 Ariz. App. 48, 50, 423 P.2d 124, 126 (1967). The record reveals a factual dispute as to the existence of an enforceable agreement between the Klees and G&K, making summary judgment on the breach of contract counterclaim inappropriate**.** *See Corbin-Dykes Elec. Co. v. Burr*, 18 Ariz. App. 101, 102-03, 500 P.2d 632, 633-34 (1972) (enforcement of contract for services requires showing of offer and acceptance).

**¶29** Similarly, the elements of G&K's unjust enrichment claim are fact-intensive. That claim requires proof of: (1) the Klees' enrichment; (2) G&K's impoverishment; (3) a link between the enrichment and the impoverishment; (4) lack of justification for the enrichment and the impoverishment; and (5) absence of a remedy provided by law. *See City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App. 1984). Furthermore, the amount of any award under an unjust enrichment theory is a question of fact.

**¶30** Because factual disputes are apparent from the record, the superior court erred by granting summary judgment to G&K on its counterclaim. We vacate that judgment and remand for further proceedings regarding the counterclaim.

## IV. Cost Award

**¶31** The superior court's cost award was based on its grant of summary judgment on all claims, which concluded the litigation entirely in Appellees' favor. However, we have vacated summary judgment on the counterclaim. As a result, the cost award is premature and must be vacated. *See Aida Renta Trust v. Maricopa County*, 221 Ariz. 603, 614, ¶ 39, 212 P.3d 941, 952 (App. 2009) (reversal of summary judgment vacates

related cost award). Once the entire case is resolved on the merits, the superior court may revisit the issue of costs.

**CONCLUSION**

**¶32**     We affirm the grant of summary judgment to Appellees on the Klees' malpractice claim. We vacate the entry of summary judgment on G&K's counterclaim and remand for further proceedings regarding the counterclaim.

**¶33**     We deny G&K's request for attorneys' fees incurred on appeal pursuant to A.R.S. § 12-341.01(A). Section 12-341.01(A) permits an award of fees to the successful party in a contested action arising out of a contract. However, we have vacated summary judgment on the counterclaim, so neither party has yet prevailed on a contract-based claim. On remand, the superior court has the discretion to award attorneys' fees incurred in this appeal to the party ultimately prevailing on the counterclaim.

**¶34**     Lunn is the only party to entirely prevail on appeal. We therefore award Lunn his appellate costs upon compliance with ARCAP 21. We do not award appellate costs to the Klees or G&K. *See Concannon v. Yewell*, 16 Ariz. App. 320, 322, 493 P.2d 122, 124 (1972) ("As a general rule, where both parties prevail on a material question on appeal, each must bear his own costs.").



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh