888 P.2d 1315

**PONDEROSA PLAZA, a joint venture, Plaintiff–Appellant, Cross Appellee,**

v.

**SIPLAST, a foreign corporation, Defendant–Appellee, Cross Appellant.**

No. 1 CA–CV 91–0265.

Court of Appeals of Arizona, Division 1, Department E.

July 22, 1993.

Aron & Associates, P.C. by Terry W. Aron and Esther B. Simon, Tucson, for plaintiff-appellant, cross appellee.

Ridenour, Swenson, Cleere & Evans, P.C. by Harold H. Swenson and Robert R. Byrne, Phoenix, for defendant-appellee, cross appellant.

## OPINION

WEISBERG, Judge.

This case arises out of a dispute over repairs to a damaged roof. The novel issue we address is whether travel expenses of out-of-state witnesses are allowable as costs pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–332. We hold that they are not.

## FACTS AND PROCEDURAL HISTORY

Appellant Ponderosa Plaza ("Ponderosa") is the owner of Ponderosa Plaza Mall in Prescott, Arizona. In 1983, the mall roof sustained hail damage. Ponderosa's insurance company, United States Fidelity and Guarantee Co. ("USF & G"), retained Richard Andrews ("Andrews"), a roofing consultant, to provide recommendations concerning potential repair methods and materials. To assist him, Andrews consulted with representatives of Siplast, a roofing materials manufacturer and supplier. Siplast's representatives helped Andrews develop a roof repair design that utilized Siplast materials in which Paradiene 30 was used as a single layer cap sheet applied over the existing damaged roof. Although Siplast did not normally recommend this type of repair plan, the design was ultimately implemented.

In April 1984, Ponderosa entered into a contract with Advance Roofing ("Advance") to repair the roof according to the recommendations of Andrews. At the time Ponderosa entered into the contract, it understood and relied upon the fact that Siplast was issuing a type of five-year leak protection warranty. While the work was being performed by Advance, Andrews and Siplast representatives supervised and inspected the project on a periodic basis, monitored some of the work, and instructed Advance on application procedures and requirements. Specifically, at least one Siplast representative inspected the project to advise about the application of its roofing materials. Advance did not, however, follow all of these recommendations. At the conclusion of the project, no representative of Siplast made a final inspection of the repaired roof.

The roof still leaked in 1987. Following unsuccessful attempts by Siplast and Advance to repair it, Ponderosa filed this lawsuit against USF & G, Advance, Andrews, and Siplast. The complaint alleged a claim under Advance's contractor's license bond against USF & G; breach of warranty, breach of contract and negligence against Advance; negligence against Andrews; and negligence and breach of warranty against Siplast. Ponderosa also asked for attorney's fees pursuant to A.R.S. section 12–341.01. Prior to trial, Ponderosa dismissed its claim

against USF & G and settled its claims against Advance. The claims against Andrews and Siplast continued to trial.

The trial court found that Andrews' supervision of the roof repair project was negligent. The trial court further concluded that Siplast was neither negligent nor in breach of any express or implied warranty. Siplast subsequently filed a request for its reasonable attorney's fees and taxable costs pursuant to A.R.S. section 12–341.01. Ponderosa objected, arguing that its claim against Siplast did not arise out of contract. The trial court awarded Siplast all of its attorney's fees and costs because Ponderosa had previously contended that a contractual relationship existed between itself and Siplast and because Ponderosa itself had requested attorney's fees in its complaint and pretrial statement. Ponderosa timely appealed.

### ISSUES

On appeal, Ponderosa argues:

1) the trial court abused its discretion by awarding Siplast its attorney's fees;

2) the trial court erred by awarding Siplast travel expenses for out-of-state witnesses as costs;

3) the trial court erred in finding that Siplast's design and plan for repairing the roof was not negligent or defective; and

4) the trial court erred in finding that the terms of the express warranty given by Siplast to Ponderosa were those contained in Siplast's Five Year Modified Materials Guarantee rather than Siplast's Roof Membrane Guarantee, and in failing to find that Siplast ˙breached the applicable Roof Membrane Warranty.

### DISCUSSION

#### 1. Attorney's Fees

■ Ponderosa argues that attorney's fees pursuant to A.R.S. section 12–341.01 are improper because this case did not arise out of contract. It contends that the primary is-sues were the negligent design of the repair plan and the breach of warranty which existed independently of a contract. It further argues that there were two warranties at issue. The first was an implied-at-law warranty that the roofing material was fit for its intended purpose. Ponderosa cites *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987), for the proposition that this type of covenant arises out of tort rather than contract. The second warranty was an express warranty against leakage that Siplast gave as the manufacturer, making Ponderosa the beneficiary as the owner of the project. Ponderosa argues that, because it was not a party to the contract between Advance Roofing and Siplast, the essence of the action more closely resembles an implied-in-law covenant under *Barmat*. We disagree.

■ *Barmat* involved the question of whether a legal malpractice action arises out of contract so that attorney's fees could be awarded pursuant to A.R.S. section 12–341.01. *Id.* at 520, 747 P.2d at 1219. The court held that such an action arises out of tort, not contract. *Id.* at 524, 747 P.2d at 1223. The court drew a distinction between a contract implied-in-fact and one implied-in-law. *Id.* at 521, 747 P.2d at 1220. It explained that a contract implied-in-law is not a true contract but an obligation "created by the law without regard to expressions of assent by either words or acts" while a contract implied-in-fact is "a true contract—an undertaking of contractual duty imposed by reason of a promissory expression." *Id.* (citing 1 Arthur Corbin, *Corbin on Contracts* § 18 at 39, § 19 at 44 (1963)). Implied-in-law contracts are recognized in professional relationships, such as attorney and client, and also in certain nonprofessional relationships such as those between innkeeper and guest, between common carrier and passenger, and between bailor and bailee. *Id.* at 522, 747 P.2d at 1221. In those relationships, the law imposes special duties as a matter of public policy and the cause of action does not depend on the existence of a contract. *Id.* at 522–23, 747 P.2d at 1221–22. The same,

however, is not true for actions arising out of implied-in-fact or express contracts. In such actions, the duty would not exist but for the promises between the parties. *Id.* at 522, 747 P.2d at 1221.

Here, the relationship between Siplast and Ponderosa is not one of a professional nature, nor is it one of the special relationships recognized at common law. We decline to extend the application of implied-in-law contracts to a relationship between the owner of a project and the material supplier. Simply, the law does not impose a special duty in this instance.

The parties agree that Siplast provided at least some type of five-year leak protection warranty. Any duty owed by Siplast therefore arises from that express warranty. Viewed in that light, *Colberg v. Rellinger,* 160 Ariz. 42, 770 P.2d 346 (App.1988), is dispositive. In that case, the court held that the claim of breach of express warranty arises out of contract rather than tort. *Id.* at 51, 770 P.2d at 355. We therefore conclude that Ponderosa's claim against Siplast was founded on contract rather than tort.

■ Ponderosa next contends that, even if we find that the express warranty claim arises out of contract, attorney's fees were improper because both the material warranty and the membrane warranty clearly disallow the recovery of consequential damages. It asserts that attorney's fees are a consequential damage. Its assertion is not well taken.

■ Consequential damages are damages which arise naturally from the breach of a contract that were within the parties' contemplation. *Miscione v. Bishop,* 130 Ariz. 371, 374, 636 P.2d 149, 152 (App.1987). Although we recognize that attorney's fees often arise from a breach of an agreement between parties, it is not the type of damage that normally is considered to be a consequential damage. In any event, the legislature has specifically provided for the recovery of attorney's fees in a contract action under A.R.S. section 12–341.01. Only this statute authorizes the award of attorneys fees in this case; the fees may not be awarded as an item of consequential damages.

■ Ponderosa next argues that, assuming this action arises out of contract, the award of attorney's fees was an abuse of discretion because the trial court did not follow the guidelines set forth in *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985). *Wagenseller* provides the following standards to assist the factfinder in determining whether attorney's fees should be granted under A.R.S. section 12–341.01:

(1) whether the unsuccessful party's claim or defense was meritorious;

(2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result;

(3) whether assessing fees against the unsuccessful party would cause an extreme hardship;

(4) whether the successful party prevailed with respect to all of the relief sought;

(5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and

(6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.

*Id.* at 394, 710 P.2d at 1049.

Ponderosa contends that because its claim was meritorious and the dispute between Siplast and it was bona fide, attorney's fees should not have been awarded. The trial court concluded otherwise. In its minute entry, the trial court stated that it had considered the requirements of *Wagenseller* and found no basis to deny the award of fees requested by Siplast. We will not substitute our discretion for that of the trial court in awarding attorney's fees pursuant to A.R.S. section 12–341.01 when the record contains a reasonable basis for the award. *Solar–West*

*Inc. v. Falk,* 141 Ariz. 414, 421, 687 P.2d at 939, 946 (App.1984). We therefore accept the conclusion of the trial court.

■ Ponderosa further argues that, assuming only a part of this action arises out of contract, and assuming the trial court did not abuse its discretion in awarding the fees, the fees should still be denied because there is an extensive overlap between the contract and negligence claims and because the fees were not appropriately apportioned by the trial court. Ponderosa cites *Circle K Corp. v. Rosenthal,* 118 Ariz. 63, 574 P.2d 856 (App. 1977), in support of its argument. In *Circle K,* the trial court denied attorney's fees because there was nothing in the record to suggest what portion of the fee was related to the claim arising out of an oral contract as distinguished from a negligence claim and other issues raised on cross-appeal. *Id.* at 69, 574 P.2d at 862. On remand, the plaintiff in *Circle K* asserted that 20% of his work was devoted to the contract theory and therefore an award of attorney's fees could be computed on that basis. *Id.* The court, however, would not accept that ratio because the contract and negligence theories overlapped extensively. *Id.*

Notwithstanding *Circle K,* in *Trus Joist Corp. v. Safeco Ins. Co. of Am.,* 153 Ariz. 95, 110, 735 P.2d 125, 140 (App.1986), we explained that *Circle K* was simply a case where Division 2 of this court exercised its discretion to decline the award of attorney's fees pursuant to A.R.S. section 12–341.01. We further explained that *"Circle K* did not establish a rule that attorney's fees may *never* be awarded if the claim for which attorney's fees is awarded is intertwined with one for which such fees are not awardable." *Id.* As stated in *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 543, 647 P.2d 1127,

1141, *cert. denied* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), "the fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under A.R.S. section 12–341.01(A) as long as the cause of action in tort would not exist but for the breach of the contract." We therefore hold that *Circle K* does not prevent the award of attorney's fees in the instant case.

■ Ponderosa's final attorney's fees argument is that the award was excessive. It asserts that the issues were simple, requiring only two sets of interrogatories and six depositions. It further asserts that there had been duplication of fees because Siplast had been represented by two law firms. In its minute entry, however, the trial court stated that Siplast explained and avowed that there had been no duplication of work between the two firms representing Siplast. In addition, the trial court found that Ponderosa's mere allegation without any specifics as to which entries on the detailed bill had been unnecessary was insufficient to support its position. We have reviewed the detailed bill for fees and agree with the trial court's findings. We find the award of attorney's fees to Siplast pursuant to A.R.S. section 12–341.01 to be proper.

## 2. Costs

■ Ponderosa argues that the trial court erred by awarding Siplast the travel expenses of its out-of-state witnesses at trial as costs pursuant to A.R.S. section 12–332(A)(6).[1] The trial court reasoned that Siplast's witnesses attended trial pursuant to its court order. As the trial court's minute entry states:

> it makes no logical sense to permit an award of costs for an attorney to travel to attend a deposition, but not for the costs

1. Ariz.Rev.Stat.Ann. § 12–332(A):

   A. Costs in the superior court include:
   1. Fees of officers and witnesses.
   2. Cost of taking depositions.
   3. Compensation of referees.
   4. Cost of certified copies of papers or records.

   5. Sums paid a surety company for executing any bond or other obligation therein, not exceeding, however, one per cent on the amount of the liability upon such bond or other obligation during each year it was in force.
   6. Other disbursements made or incurred pursuant to an order or agreement of parties.

for a witness to attend the trial. (Even a witness who is also a party). A.R.S. § 12–332, subparagraph 6, permits recovery of costs for disbursements made or incurred pursuant to a court order. The setting and mandating of the trial of this case was a court order which can be interpreted as fitting within this catch-all paragraph. Defendant *incurred* these costs at trial. They were for expenses paid to present important witnesses. Therefore, the Court grants all of Defendant's requested costs.

We do not, however, agree with the trial court's interpretation of A.R.S. section 12–332(A)(6).

▮▮▮▮ The primary rule of statutory interpretation is to determine the intent of the legislature. *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). When determining the intent of the legislature, we must look at the meaning that naturally attaches to the words used and that best harmonizes with the context. *State v. Miller,* 100 Ariz. 288, 296, 413 P.2d 757, 763 (1966). Unambiguous statutes must be given their plain and obvious meaning unless absurdity results. *Walls v. Ariz. Dep't of Pub. Safety,* 170 Ariz. 591, 594, 826 P.2d 1217, 1220 (App.1991).

Section 12–332(A) sets forth several categories of taxable costs. Included among the taxable costs is the cost of taking depositions. A.R.S. § 12–332(A)(2). As correctly noted by the trial court, the cost of depositions may include the travel expenses of an attorney to attend the other party's deposition outside of Arizona. *Young's Market Company v. Laue,* 60 Ariz. 512, 517, 141 P.2d 522, 524 (1943).

▮▮▮▮ Expenses not enumerated in A.R.S. section 12–332 are not generally recoverable as costs. *Fowler v. Great American Ins. Co.,* 124 Ariz. 111, 114, 602 P.2d 492, 495 (App. 1979). Our legislature has included several specific items of taxable costs. It did not include the travel expenses of out-of-state witnesses to attend trial. If the legislature had wanted to include such travel expenses, it would have clearly done so. For example, in A.R.S. section 12–303, the legislature has provided that material witnesses shall be paid mileage "at the rate of twenty cents for each mile actually and necessarily traveled from his place of residence in the State of Arizona to the place of trial, to be computed one way only." Contrasted with the specific provisions of A.R.S. section 12–303, the legislature did not see fit to provide for the reimbursement of travel costs for out-of-state witnesses. We must give due consideration to the legislature's failure to do so.

▮▮▮▮ Moreover, we do not believe that the trial court order setting and mandating the trial of this case is the type of order contemplated by A.R.S. section 12–332(A)(6). The attendance of a material witness living in Arizona may be required by a subpoena from the trial court. Thus, A.R.S. section 12–303 requires the reimbursement of the resulting travel costs. Material witnesses who live outside Arizona are not within the subpoena power of our courts. We therefore find that the reimbursement of travel expenses of out-of-state witnesses as costs is not authorized by A.R.S. section 12–332(A)(6).

### 3. Negligence

▮▮▮▮ Ponderosa next argues that the evidence produced at trial overwhelmingly establishes that Siplast was negligent in recommending that the roof be repaired by applying a single layer cap sheet over the existing damaged roof because this was a procedure not usually recommended by Siplast. It further contends that because Andrews was found to be negligent in his supervision and oversight, Siplast too should have been found negligent in assisting and supervising the repair of the roof.

▮▮▮▮ The trial court found that Ponderosa failed to establish by a preponderance of the evidence that Siplast's design and plan for repairing the roof was negligent or that the materials used were defective as a result of their manufacture or that the materials deteriorated as a result of ordinary wear and tear. We are bound by the trial court's findings of fact unless they are clearly erro-

neous. *Combs v. DuBois,* 135 Ariz. 465, 468, 662 P.2d 140, 143 (App.1982). We find that the record supports this finding.

The facts do show that Siplast representatives approved of and assisted Andrews in the design of the roof repair. While the work was being performed, however, Siplast representatives did no more than inspect the project on a periodic basis and at such times supervise the work and instruct Advance on application procedures and requirements. Significantly, although Siplast made some recommendations, Advance did not follow all of them. In any event, several experts' reports that were admitted into evidence support the finding that Siplast's conduct was not negligent and its materials not faulty.

Two roofing experts concluded that the problems with the roof related directly to incorrect application procedures rather than design. A third roofing expert concluded that the Siplast materials conformed to original specifications, even after years of weathering. We find that this evidence clearly supports the trial court's finding that neither Siplast's design nor its materials were defective.

### 4. Warranty

Ponderosa's final argument concerns the terms of the express warranty given to it by Siplast. Ponderosa argues that the trial court erred in finding that the terms of the express warranty were those contained in Siplast's Five Year Modified Materials Guarantee instead of those contained in Siplast's Roof Membrane Guarantee. If the terms of the Roof Membrane Guarantee applied, Ponderosa asserts that the facts would support the finding that Siplast breached that warranty.

This court may draw its own legal conclusions from facts found or inferred in the judgment of the trial court, and we are not bound by the findings of the trial court in questions of law or mixed questions of law and fact. *Huskie v. Ames Bros. Motor and Supply Co., Inc.,* 139 Ariz. 396, 401, 678 P.2d 977, 982 (App.1984). The difference between the two guarantees is significant. The Five Year Modified Materials Guarantee warrants the roof only against leaks caused by defects in Siplast materials, while the Roof Membrane Guarantee warrants both materials and labor. The form of Roof Membrane Guarantee asserted by Ponderosa is published in a manual entitled Siplast Roofing Systems and Specifications. Ponderosa argues that it relied on this publication and therefore believed Siplast was issuing a Roof Membrane Guarantee. The record, however, does not support Ponderosa's argument.

First, Ponderosa admitted at trial that it knew only that it was getting some type of five-year leak protection guarantee. It did not know the specific terms of the guarantee. Therefore, it could not have relied upon the specific terms of the Roof Membrane Guarantee.

Second, although the manual does reflect that the Roof Membrane Warranty applies to standard Paradiene roof systems, there was evidence that the design used for the mall's Paradiene roof was not one of the roof systems described in the manual. Therefore, it cannot be concluded that the Roof Membrane Guarantee was held out either to Ponderosa in particular or the public in general as being applicable to the subject Paradiene roof system. Because the Paradiene roof system in this case was a special procedure not normally recommended by Siplast, the trial court concluded that Siplast had given the special Five Year Modified Materials Guarantee. There is no evidence in the record that supports Ponderosa's claim that it had relied upon the terms of the broader Roof Membrane Guarantee.

We therefore conclude that the trial court did not err in finding that the terms of the express warranty given by Siplast to Ponderosa were those contained in Siplast's Five Year Modified Materials Guarantee. Having reached this conclusion, we need not consider whether Siplast breached any of the provisions of the nonapplicable Roof Membrane Guarantee.

136

CONCLUSION

For the foregoing reasons, we affirm all portions of the judgment except the award of travel expenses of trial witnesses as costs, which we vacate.

GERBER, P.J., and LANKFORD, J., concur.