6 P.3d 315

**RAMSEY AIR MEDS, L.L.C., an Arizona limited liability company, Plaintiff/Appellee,**

v.

**CUTTER AVIATION, INC., an Arizona corporation; John Skoro and Cynthia Skoro, husband and wife, Defendants/Appellants.**

No. 1 CA–CV 99–0392.

Court of Appeals of Arizona, Division 1, Department A.

June 8, 2000.

DeConcini McDonald Yetwin & Lacy, P.C. by Philip R. Wooten, Phoenix, for Appellee.

Ryan Walker & Rapp, P.L.C. by Polly S. Rapp, Frank L. Migray, Christopher T. Rapp, Phoenix, for Appellants.

## OPINION

ACKERMAN, Judge.

¶ 1 We consider whether the trial court erred in awarding attorneys' fees to Plaintiff

under Arizona Revised Statutes Annotated ("A.R.S.") section 12–341.01(A) (1992).[1] The trial court found for Plaintiff on its negligence claim but not on its contract claim. Because we conclude that Plaintiff's successful negligence claim did not arise "out of a contract," we reverse the award of attorneys' fees.

### BACKGROUND

¶ 2 In October 1995, Plaintiff/appellee Ramsey Air Meds, L.L.C. ("Ramsey"), purchased a 1973 Rockwell 690A Commander aircraft. The aircraft was powered by two Garrett turboprop engines.

¶ 3 Shortly after receiving the aircraft, Ramsey entered into a contract with Defendant/appellant Cutter Aviation, Inc. ("Cutter") to "manage" the aircraft, including providing "pilot services" as needed, providing hangar space, and advising on necessary maintenance and repairs. Cutter is in the business of aircraft maintenance, refurbishment, sales, and rentals.

¶ 4 Pursuant to the contract, Cutter supplied pilot Gary Neely to fly the aircraft. Mr. Neely flew the aircraft on thirteen flights without incident. During the initial weeks of the contract, Cutter provided maintenance and repair services for the aircraft as needed.

¶ 5 When it appeared that Mr. Neely would no longer be available to pilot the aircraft, Cutter selected a second pilot, Defendant/appellant John Skoro. Mr. Skoro was an experienced pilot, with substantial experience in other turboprop aircraft, but with no experience in the Rockwell 690A Commander. Mr. Neely therefore provided Mr. Skoro with instruction and training on the Rockwell aircraft, including training flights.

¶ 6 On December 16, 1995, Mr. Skoro made his first flight as "pilot in command" of the aircraft. He flew the aircraft from Phoenix to Prescott to pick up Mr. Ramsey (Ramsey's President) and his mother. The flight was normal, although the weather in Prescott was cold, overcast, and snowy.

¶ 7 When Mr. Skoro attempted to re-start the airplane engines for the return flight to Phoenix, there was some difficulty in starting the right engine. On its first two start attempts, the right engine did not start normally and Mr. Skoro aborted the start by pulling the "condition lever" to cut off fuel to the engine. The engine started on the third try. Mr. Skoro later noted that the right engine could not attain full power during the flight back to Phoenix. Nevertheless, the return trip was safe and uneventful.

¶ 8 In Phoenix, Cutter determined that the right engine was damaged and removed it. The engine was flown to facilities in Oklahoma, where it was disassembled and examined. Ramsey's expert concluded that the engine had been damaged in "an operator induced overtemperature excursion during one or more starts at Prescott." The expert concluded that Mr. Skoro failed to have the engines' propellers in their "unfeathered" position during the start, and that this caused the right engine to exceed its operating temperature during the start. Mr. Skoro denied starting the engines with the propellers in the wrong position.

¶ 9 Ramsey brought suit against Cutter and the Skoros (jointly "Defendants"), asserting one claim for breach of contract (failure to provide a qualified pilot) and one claim for negligence. Cutter denied liability, contending that Mr. Skoro was qualified, had operated the aircraft correctly, and that the damage was caused by other mechanical problems.

¶ 10 After a bench trial, the court found for Ramsey on the negligence claim but against Ramsey on the contract claim. It awarded Ramsey $93,278.61 in damages on the negligence claim, prejudgment interest of $21,628.52, and costs of $230.25. Concluding that the negligence claim arose "out of a contract," the trial court also awarded Ramsey $37,626.95 in attorneys' fees pursuant to A.R.S. § 12–341.01(A).

¶ 11 Defendants appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (1994).

---

1. Other issues raised in this appeal are addressed in a separate Memorandum Decision pursuant to Rule 28(g), Arizona Rules of Civil Appellate Procedure.

## DISCUSSION

¶ 12 The application of A.R.S. § 12–341.01(A) to Ramsey's claims is a question of statutory interpretation, which we review *de novo*. *See Hampton v. Glendale Union High Sch. Dist.*, 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (1992). The trial court's decision on the amount of fees to award is reviewed under the abuse of discretion standard. *See Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 466, 733 P.2d 652, 663 (1986).

¶ 13 At the time relevant to this action, § 12–341.01(A) provided:

In any contested action *arising out of a contract*, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

A.R.S. § 12–341.01(A) (1992) (emphasis added).

¶ 14 There is no doubt that Ramsey was the successful party in this action: although it prevailed on only one of its two claims, it was entirely successful in securing the relief it sought. *See Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (1983).

¶ 15 The attorneys' fee issue, however, is complicated by the fact that Ramsey prevailed on its tort claim but not on its contract claim. Ramsey contends that the trial court properly awarded fees for its successful tort claim on any of three grounds: (1) Defendants conceded fees were appropriate; (2) the tort claim was "interwoven" with the contract claim; or (3) the tort claim itself arose "out of a contract" so as to support an award of fees.

### 1. Admission.

¶ 16 Ramsey first points out that Defendants admitted in their pleadings that "the allegations of Ramsey's complaint arise out of contract." Because the Complaint included a claim for breach of contract, such an admission was appropriate. We do not believe it controls the issue, however, when Ramsey did not prevail on its contract claim.

### 2. Interwoven.

¶ 17 It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an "interwoven" tort claim. *See Pettay v. Insurance Mktg. Servs., Inc. (West)*, 156 Ariz. 365, 368, 752 P.2d 18, 21 (1987); *Campbell v. Westdahl*, 148 Ariz. 432, 440–41, 715 P.2d 288, 296–97 (1985). The litigants in those cases, however, prevailed on both of the interwoven claims. Here, because Ramsey did not prevail on its contract claim, the "interwoven" nature of the tort claim cannot support an award of fees. A tort claim does not come within the attorneys' fee statute by being interwoven with an *unsuccessful* contract claim.

### 3. Arising Out Of A Contract.

¶ 18 Ramsey's third argument raises more difficult issues. Even in the absence of an express contract claim, a tort claim may itself arise "out of a contract" so as to support an award of attorneys' fees. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 542–44, 647 P.2d 1127, 1140–42 (1982). The trial court found that Ramsey's negligence claim arose out of the contractual relationship between the parties and awarded fees on that basis. Analyzing this ruling requires us to consider the voluminous and sometimes confusing case law interpreting the statutory phrase "arising out of a contract."

¶ 19 The statute obviously applies to express claims for breach of contract. *See, e.g., Cahn v. Fisher*, 167 Ariz. 219, 223, 805 P.2d 1040, 1044 (1990). Difficulties have arisen, however, when tort or statutory claims are intertwined with contract issues. For example, one court stated that attorneys' fees incurred in tort claims may be recovered so long as a contract was "a factor" in causing the dispute. *See ASH, Inc. v. Mesa Unified Sch. Dist. No. 4*, 138 Ariz. 190, 192, 673 P.2d 934, 936 (1983). Others examined whether the "essence" of the claim being asserted was tort or contract. *See Earven v. Smith*, 127 Ariz. 354, 358, 621 P.2d 41, 45 (1980); *Amphitheater Public Schools v. Eastman*, 117 Ariz. 559, 560, 574 P.2d 47, 48 (1977).

¶ 20 The Arizona Supreme Court first considered this issue closely in *Sparks*. The plaintiff in *Sparks* prevailed on an insurance bad faith claim and a statutory misrepresentation claim. The trial court awarded attorneys' fees under A.R.S. § 12–341.01(A). On appeal, the supreme court held that the insurance bad faith claim did "aris[e] out of a contract" for purposes of the attorneys' fee statute:

> It is apparent from the *Wenk* case that attorney's fees may be awarded pursuant to § 12–341.01(A) based upon facts which show a breach of contract, the breach of which may also constitute a tort. The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under § 12–341.01(A) as long as *the cause of action in tort could not exist but for the breach of contract.*
>
> . . . .
>
> *Clearly, the tort of bad faith cannot be committed absent the existence of an insurance contract and a breach thereof.* Because the existence of the tort is so intrinsically related to the contract, we conclude that an action alleging insurer's bad faith is one "arising out of a contract" within the meaning of § 12–341.01(A).

*Id.* at 543–44, 647 P.2d at 1141–42 (emphasis added).

¶ 21 In applying the *Sparks* test, a court is not limited to the "form of the pleadings," but should look to "the nature of the action and the surrounding circumstances to determine whether the claim is one 'arising out of a contract.'" *Marcus v. Fox*, 150 Ariz. 333, 335, 723 P.2d 682, 684 (1986). The "mere existence of a contract somewhere in the transaction" is not enough to support a fee award. *See id. Sparks* requires that the contract have some causal connection with the claim to support an award of fees. *See id.* at 336, 723 P.2d at 685 (holding that a claim for fraudulent inducement of a contract arose from a contract because plaintiff's "cause of action for tort could not have existed but for the fraudulently induced contract"). *Marcus* notes that an actual "breach" of contract may not be required, upholding an award of fees when "a contract

is entered into and later found void due to a claim of fraudulent inducement." *Id.*

¶ 22 The landscape of "arising out of a contract" analysis was transformed in 1987 with the supreme court's decision in *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987). In that case, the plaintiff argued that its successful tort claim for legal malpractice arose out of its contract for legal services because the law implies a duty of due care into every professional contract. The supreme court, however, held that the breach of such legally implied duties sounds in tort, not contract. It pointed out that the insurance bad faith claim in *Sparks* "could not have existed 'but for' the breach of agreements, express or implied, in the contract of indemnity." *Id.* at 522, 747 P.2d at 1221. In contrast, the duties imposed on attorneys exist even in the absence of contract and may extend to all persons within the foreseeable range of harm. The court explained:

> [W]here the implied contract does no more than place the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is tort, not contract.

*Id.* at 523, 747 P.2d at 1222. *Barmat* expressly rejected the contrary analysis of *Trebilcox v. Brown & Bain*, 133 Ariz. 588, 653 P.2d 45 (1982). *See Barmat*, 155 Ariz. at 524, 747 P.2d at 1223.

¶ 23 The *Barmat* case itself shows that the "legal duty" analysis is not restricted to "special relationships" such as attorney-client or doctor-patient. The court noted:

> Consider, for example . . . the seller of a chattel that causes damage. If the chattel was defective and unreasonably dangerous . . . the injured buyer may maintain a tort action under the theory of strict liability. Here, too, although the relationship between buyer and seller arose out of a contract, the essential nature of the action sounds in tort: the liability of the seller would exist even without the contract. Even a "mere bystander" having no contractual relationship could recover from

the seller. The duty breached is one imposed by law.

*Barmat*, 155 Ariz. at 523 n. 1, 747 P.2d at 1222 n. 1 (citation omitted). *Barmat's* rationale applies whenever the law imposes a duty of care on a party regardless of the existence of a contract.[2]

¶ 24 The court in *Barmat* expressly approved the analysis of *Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 725 P.2d 736 (1986). *See Barmat*, 155 Ariz. at 523, 747 P.2d at 1222. In that malpractice case against an accountant, we held:

> [W]hile a contractual relationship may give rise to a duty to perform in accordance with a certain standard of care, this legally imposed duty exists separate and apart from the contract giving rise to the duty. The failure to comply with this standard of care results in a breach of the legal duty imposed and is not an action "arising out of contract" under A.R.S. § 12–341.01(A).

*Lewin*, 151 Ariz. at 36, 725 P.2d at 743; *see also Haldiman v. Gosnell Dev. Corp.*, 155 Ariz. 585, 591, 748 P.2d 1209, 1215 (1987) (broker's duty of disclosure does not arise out of contract).

¶ 25 Arizona courts have frequently applied the "legal duty" analysis in cases when there was no special relationship. *See Morris v. Achen Constr. Co.*, 155 Ariz. 512, 514, 747 P.2d 1211, 1213 (1987) (a claim of fraudulent inducement of a contract with a third party does not arise out of the contract because the "duty not to commit fraud ... exists ... even when there is no contractual relationship between the parties at all"); *Fry's Food Stores, Inc. v. Mather and Assocs., Inc.*, 183 Ariz. 89, 91–92, 900 P.2d 1225, 1227–28 (1995) (a suit for negligent construction resulting in property damage arose from tort, not contract); *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 201, 888 P.2d 1375, 1388 (1994) (claim for intentional infliction of emotional distress did not arise out of insurance

contract); *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 486, 763 P.2d 545, 550 (1988) ("The duty not to interfere with the contract of another arises out of law, not contract."); *Western Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 7, 739 P.2d 1318, 1324 (1986) ("the law imposed on Sverdrup a duty not to speak negligently, injuriously or falsely of Western, 'separate and apart' from any duty that the contract between the Board and Sverdrup imposes").

¶ 26 A claim may still arise "out of a contract" for professional services when the contract imposes *additional* duties beyond those implied by law. For example, in *Asphalt Engineers, Inc. v. Galusha*, 160 Ariz. 134, 770 P.2d 1180 (1989), an attorney orally contracted with his client to file liens on two construction projects. When the attorney neglected to file the liens within the statutory time, the client sued for breach of contract and malpractice. This court upheld the award of fees because the promise to file the liens was an express term of the contract. *See id.* at 138, 770 P.2d at 1184. That claim did not depend on any implied duty of care, but rather on the express contractual terms.

¶ 27 From these authorities, we distill the following principles for determining whether a tort claim "arises out of a contract." In analyzing this issue, the court should look to the fundamental nature of the action rather than the mere form of the pleadings. The existence of a contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims. Rather, a tort claim will "arise out of a contract" only when the tort could not exist "but for" the breach or avoidance of contract. When the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract. In such cases, it cannot be said that the plaintiff's claim would not exist "but for" the

---

**2.** The status of the attorneys' fee discussion in *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580 (1987), is somewhat unclear. *Ford* predates *Barmat* by ten months and expressly relies on *Trebilcox*, which *Barmat* rejected. The plaintiff's claim in *Ford* was for intentional infliction of emotional distress—clearly involving the breach of a tort duty imposed by law. On the other hand, the

specific duties that the employer in that case breached were express terms of the employee handbook, which was found to constitute an implied contract with the plaintiff. Thus, although *Ford's* analysis appears to have been superseded, its affirmance of the fee award may still be consistent with *Barmat*.

contract. The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract.

¶ 28 Turning to the present case, we conclude that the negligence claim against Mr. Skoro and Cutter (by *respondeat superior*) is akin to the tort claims in *Barmat* and *Lewin*, not the bad faith claim in *Sparks*. The pilot of an aircraft owes a legal duty of care to many people: persons in other aircraft, bystanders on the ground, and passengers. *See Coyner Crop Dusters v. Marsh*, 90 Ariz. 157, 162, 367 P.2d 208, 211 (1961) (a pilot's liability is determined by ordinary tort principles); *Redhead v. United States*, 686 F.2d 178, 182 (3d Cir.1982) (a pilot owes passengers a duty of due care); *Spaulding v. United States*, 455 F.2d 222, 226 (9th Cir. 1972) ("general negligence law applies to airplane tort cases"); *United States v. Schultetus*, 277 F.2d 322, 325 (5th Cir.1960) ("Liability growing out of the operation of aircraft is to be determined by the ordinary rules of negligence and due care."). As these cases show, this duty is based not on contract, but on tort law. Under tort law, a pilot is liable for damage caused to an aircraft by his or her negligence. *See Reckart v. Avra Valley Air, Inc.*, 19 Ariz.App. 538, 540, 509 P.2d 231, 233 (1973) (student pilot found liable for negligence while taxiing that caused damage to an aircraft). This tort duty exists without consideration of any contract terms between the parties. *See id.*[3]

¶ 29 Here, Cutter contracted to supply "pilot services." The trial court found that Cutter satisfied this contractual duty by supplying a qualified pilot. The evidence supports that finding. While operating the aircraft, Cutter's pilot owed legal, not contractual, duties of due care to all persons within the foreseeable zone of danger—including operators of other aircraft, passengers, bystanders, and the owner of the aircraft. Mr. Skoro's negligence breached that legal duty and constituted a tort. Mr. Skoro, and Cutter as his employer, are liable for the damage caused by that negligence as a matter of tort law. We therefore conclude that the trial court erred in awarding Ramsey its attorneys' fees for the negligence claim.

## 4. Reconsideration Of The Contract Claim.

¶ 30 In connection with its motion for attorneys' fees, Ramsey requested the trial court to reconsider the ruling on the breach of contract claim, contending that Cutter violated an implied contractual obligation to operate the aircraft in a "workmanlike manner." The trial court found this issue moot and did not rule on it because of its holding that the tort claim itself arose out of the contract so as to support a fee award. Ramsey urges this theory on appeal as an alternate ground to support the judgment. *See Haenichen v. Worthington*, 9 Ariz.App. 83, 86, 449 P.2d 319, 322 (1969).

¶ 31 We conclude that this theory, even if properly raised at trial and accepted by the fact-finder, would not support an award of fees under A.R.S. § 12–341.01(A). The duty of performing in a "workmanlike" manner is a duty implied by law. *See Reliable Elec. Co. v. Clinton Campbell Contractor, Inc.*, 10 Ariz.App. 371, 374, 459 P.2d 98, 101 (1969) ("Even in the absence of a specific contractual provision, the law implies a requirement that a contractor ... do so in a good workmanlike manner and in a manner befitting a skilled contractor."). The implied duty of operating the aircraft competently is therefore the same sort of implied duty of care that was found insufficient to support an award of fees in *Barmat*.

¶ 32 Ramsey suggests, however, that the duty of competence may be "implied-in-fact," rather than by law, thereby escaping the *Barmat* rationale. Ramsey cites *Ponderosa Plaza v. Siplast*, 181 Ariz. 128, 888 P.2d 1315

---

3. Defendants point out that A.R.S. § 28–8273 imposes liability on a pilot as a matter of statutory law. That statute holds a pilot "responsible" for damage "to a person or property that is caused by aircraft directed by the pilot ... and that results from the negligence of the pilot." *Id.* We do not believe this statute is applicable here. The damage to property in this case was not "caused by aircraft directed by the pilot" in the normal sense of those words. Even if applicable, this statute merely restates pre-existing tort principles, and does not change the fundamental nature of the action.

(1993), as support for this view. In that case, Ponderosa asserted negligence and breach of express warranty claims against Siplast arising from the allegedly defective design and supervision of a roofing job. When Siplast prevailed at trial, the trial court awarded Siplast its attorneys' fees. *See id.* at 132–33, 888 P.2d at 1319–20.

¶ 33 Addressing the fee issue, this court noted that the *Barmat* analysis applies only to contract terms implied by law, not those implied-in-fact:

> The same [result], however, is not true for actions arising out of implied-in-fact or express contracts. In such actions, the duty would not exist but for the promises between the parties.

*Ponderosa Plaza*, 181 Ariz. at 131–32, 888 P.2d at 1318–19. We held that the claim in that case arose from the express "five-year leak protection warranty" and that a claim on such an express warranty *does* arise out of contract. *See id.* at 132, 888 P.2d at 1319.

¶ 34 *Ponderosa Plaza* recognizes that implied-in-fact contractual terms are part of the actual contract between the parties, not duties implied by law. The breach of such terms will normally yield a claim "arising out of a contract" for attorneys' fees purposes. For example, when a builder contracted with a plumbing company to install plumbing fixtures in fifty new houses, the contract contained an implicit promise that the fifty houses would be built. A suit for breach of this implied-in-fact term was a suit based on the actual contract between the parties. *See Zancanaro v. Cross*, 85 Ariz. 394, 398, 339 P.2d 746, 749 (1959). Such a claim will support an award of attorneys' fees.

¶ 35 The supposedly "implied-in-fact" term in this case, however, is of an unusual nature. It simply echoes the pilot's pre-existing legal duty to use due care. Arguing that this legal duty might also have been "implied-in-fact" in the parties' contract does not alter the fundamental nature of the claim. *Barmat* held that the breach of such legal duties sounds in tort, not contract. We doubt that the *Barmat* court intended that its analysis

could be evaded by simply arguing that the parties had an "implied-in-fact" agreement that an attorney would use due care in providing legal services.

¶ 36 Moreover, an implied term merely duplicating a duty imposed by law does not satisfy the "but for" test of *Sparks*. When the implied contractual duty merely duplicates a legal duty, it cannot be said that "the cause of action in tort could not exist *but for* the breach of contract." *See Sparks*, 132 Ariz. at 543, 647 P.2d at 1141 (emphasis in original). A tort claim for violation of the legal duty of care would exist irrespective of the breach of the identical implied contractual term.

¶ 37 A similar argument arose in *Lohse v. Faultner*, 176 Ariz. 253, 860 P.2d 1306 (1992). In that case, Faultner had a legal duty to conduct logging operations with reasonable care to prevent fires. Faultner's contract also expressly imposed that same duty. Considering whether this contractual repetition of the legal duty would support a fee award, we stated:

> The contract element of this dual assertion was not essential to plaintiffs' tort claim against Faultner; plaintiffs might have sued Faultner in tort alone for his failure to take reasonable precautions against fire.

*Id.* at 264, 860 P.2d at 1317.[4] Thus, when a contractual duty, either express or implied-in-fact, merely repeats the duty already imposed by law, a breach of that duty does not create a claim "arising out of a contract" under A.R.S. § 12–341.01(A). On the other hand, when an implied-in-fact term creates an obligation in addition to those imposed by law, a breach of that obligation would arise from the contract. *See Ponderosa Plaza*, 181 Ariz. at 131–32, 888 P.2d at 1318–19; *Asphalt Engineers*, 160 Ariz. at 138, 770 P.2d at 1184.

¶ 38 We hold that Ramsey's alternate theory regarding an "implied-in-fact" contractual duty of workmanlike performance fails to bring this case within A.R.S. § 12–341.01(A). Such an implied term, merely repeating the

---

4. In *Lohse*, other factors not present here supported an award of fees. 176 Ariz. at 264, 860 P.2d at 1317.

**18**

legal duty, does not change the essentially tort nature of the claim.

## CONCLUSION

¶ 39 We reverse the award of attorneys' fees and remand for further proceedings consistent with this opinion.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, and JAMES B. SULT, Judge.