NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

BUXTON ARLINGTON PET, LLC, et al., *Plaintiffs/Appellees*,

*v.*

RONALD H. BUTLER, et al., *Defendants/Appellants*.

No. 1 CA-CV 16-0260
FILED 10-31-2017

———————————————

Appeal from the Superior Court in Maricopa County
No. CV 2014-004088
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

———————————————

COUNSEL

Gust Rosenfeld, PLC, Phoenix
By James H. Marburger
*Counsel for Defendants/Appellants*

Dickinson Wright, PLLC, Phoenix
By David G. Bray, Anne L. Tiffen
*Counsel for Plaintiffs/Appellees*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Margaret H. Downie joined.

---

**C A M P B E L L**, Judge:

¶1             Plaintiffs-appellees Buxton Arlington Pet, LLC, Buxton Plano Pet, LLC, and Buxton Happy Valley Pet, LLC ("Buxton") filed suit against defendants-appellants Ronald Butler and Nancy Butler ("Butler"), alleging various tort claims. The superior court granted Butler's motion for summary judgment, finding each claim barred by the statute of limitations. Butler now appeals the superior court's denial of his request for attorney fees under Arizona Revised Statutes ("A.R.S.") section 12-341.01(A). For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2             Ronald Butler served as president and CEO of Pet Resorts, Inc. ("PRI") between 2006 and 2008. In 2007 and 2008, PRI and Buxton entered into multiple contracts for Buxton to construct several new pet resort locations and then lease them to PRI.

¶3             Buxton alleges that, in a meeting preceding the agreements, Buxton's representative expressed concern about PRI's financial condition and made clear he would not recommend that Buxton sign a development agreement without additional financial backing. Buxton alleges Butler explained PRI had a line of credit that would "be available" to cover operational shortfalls and rent payments for each new location in the event PRI was unable to fund its lease obligations and operating costs. Buxton claims this assurance was "essential" to its decision to enter into its initial development agreement with PRI.

¶4             The parties agree PRI defaulted on its leases with Buxton by March 2011. Buxton alleges it first learned in April 2012 that there were restrictions on the line of credit, undisclosed by Butler, precluding its use to cover any operational shortfalls or rent payments. Buxton also alleges that at that same time it discovered PRI had in fact used the line of credit for other development purposes. PRI filed for bankruptcy in June 2012.

¶5         In August 2014, Buxton filed suit against Butler, alleging fraud in the inducement, negligent misrepresentation, and aiding and abetting fraud in the inducement and negligent misrepresentation. Butler filed a motion for summary judgment on all claims. The superior court granted Butler's motion, finding the statute of limitations had run on each of Buxton's claims.

¶6         Butler moved for an award of attorney fees, arguing Buxton's claims arose out of a contract under A.R.S. § 12-341.01(A). The superior court found Buxton's claims did not arise out of a contract within the meaning of the statute and therefore denied Butler's motion. Butler timely appealed.

## DISCUSSION

¶7         Section 12-341.01(A) gives a court the discretion to award the successful party reasonable attorney fees "[i]n any contested action arising out of a contract, express or implied." Butler argues that Buxton's claims could not exist but for the breach of the lease contracts between Buxton and PRI, and therefore that he may be awarded attorney fees under the statute. The application of A.R.S. § 12-341.01(A) to Buxton's claims is a question that "requires us to consider the voluminous and sometimes confusing case law interpreting the statutory phrase 'arising out of a contract,'" *Ramsey Air Meds, LLC v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, ¶ 18 (App. 2000), and one which we review de novo, *id*. at 13, ¶ 12.

¶8         Arizona courts broadly interpret A.R.S. § 12-341.01(A), *Marcus v. Fox*, 150 Ariz. 333, 334 (1986), but if a contract forms only a "factual predicate to the action" and is not its "essential basis," the action does not arise out of a contract, *Hanley v. Pearson*, 204 Ariz. 147, 151, ¶ 17 (App. 2003). In cases in which a combination of tort and contract theories are alleged, "this court will look to the nature of the action and the surrounding circumstances to determine whether the claim is one arising out of a contract," regardless of the form of the pleadings. *Marcus*, 150 Ariz. at 335 (citation omitted). The Legislature, however, "clearly did not intend that every tort case would be eligible for an award of fees whenever the parties had some sort of contractual relationship." *Fry's Food Stores of Ariz. v. Mather & Assoc., Inc.*, 183 Ariz. 89, 92 (App. 1995) (citation omitted).

¶9         In denying Butler's request for attorney fees under this statute, the superior court reasoned:

>       In *Morris*, the Arizona Supreme Court held that "fraudulently inducing one to enter into a contract with a third party is not

the type of tort falling within the ambit of A.R.S. § 12-341.01.[(A)]" [*Morris v. Achen Constr. Co.*, 155 Ariz 512, 514 (1987).] The instant situation is unlike *Marcus v. Fox*, 150 Ariz. 333 (1986), where one of the parties to the contract sued the other party to the contract, claiming that he had been fraudulently induced to enter the contract.

Here, [plaintiffs] claimed that the Butlers fraudulently and negligently induced them to enter into a contract with a third party. The instant situation is closer on point with *Morris* than with the cases allowing the recovery of attorneys' fees.

We are obligated to agree.

¶10            In 1987, the Arizona Supreme Court established what seemed to be a bright-line rule regarding attorney fees in *Marcus,* 150 Ariz. 333. In *Marcus,* a jury found that Fox had fraudulently induced Marcus to enter into a contract to purchase an apartment complex from Fox. *Id.* at 334. Marcus had not alleged Fox was in breach of contract; only that Fox had fraudulently induced him to enter into the contract. *Id.* Expanding upon the earlier case of *Sparks v. Republic National Life Insurance Company*, 132 Ariz. 529 (1982)—which held that attorney fees may be awarded as long as "the cause of action in tort could not exist *but for* the breach of the contract" *Marcus*, 150 Ariz. at 335 (quoting *Sparks*, 132 Ariz. at 542)—our supreme court decided the "arising out of a contract" language "is not limited to only those cases in which a contract is entered into and subsequently breached," *Marcus*, 150 Ariz. at 335. The court cautioned that attorney fees "are not appropriate based on the mere existence of a contract somewhere in the transaction," but held the underlying contract was enough of a factor in the dispute to establish the "requisite causal link" to Marcus's tort claim and allow him to recover attorney fees. *Id.* at 335. This ruling seemed to open the gates for claims of attorney fees in tort cases alleging fraud in the inducement.

¶11            However, later that same year, the supreme court handed down the *Morris* decision, limiting the holding in *Marcus* and creating a what appears to be another bright-line rule on awards of attorney fees in fraud in the inducement cases. The court explained that the litigants must also be the parties to the contract giving rise to the tort:

[F]raudulently inducing one to enter into a contract with a third party is not the type of tort falling within the ambit of A.R.S. § 12-341.01(A).

4

. . . .

> [T]his case is unlike *Marcus* . . . [in which] one of the parties to a contract sued the other party to the contract, claiming that he had been fraudulently induced to enter the contract. We held that where the validity of the contract was challenged on grounds of fraudulent inducement, the claim was one "arising out of contract" . . . . In the instant case, the parties to the litigation are not the parties to the contract, and there is no contention, as between them, that any contract is invalid. This is wholly an action for damages for fraud where the alleged fraud is claimed to have resulted in one party entering into a contract with a third party.

*Morris*, 155 Ariz. at 514.

¶12 Here, Buxton alleged that Butler was personally liable for fraud in the inducement, negligent misrepresentation, and aiding and abetting in both. Butler does not argue that he was a party to the relevant contracts. Under *Morris*, then, the "requisite causal link" outlined in *Marcus* is not present because Butler was not himself a party to the contracts.

¶13 We recognize this court arguably departed from this party/non-party dichotomy in *Caruthers v. Underhill*, 230 Ariz. 513 (App. 2012). In that case, the plaintiffs both entered into contracts to sell their shares of a closely-held family company's stock to an officer of the company; after discovering they had sold the shares to the officer for much less than they were worth, they sued him for breach of fiduciary duty, common law fraud, consumer fraud, and securities fraud. *Id.* at 516-18, ¶¶ 2-11. They also sued the company for aiding and abetting the same. *Id.* at 518, ¶ 11. This court held:

> UHC [the company] argues that *Marcus* controls. We agree. Like *Marcus*, the basis for [plaintiffs'] claims was their contention that Clinton [the officer] had fraudulently induced them to enter into an agreement to sell their shares for less than their value. The claims against UHC likewise arose from its part in the same alleged fraudulent inducement. The tort claims would not exist but for the allegedly fraudulently induced contract.

*Id.* at 526-27, ¶ 59.

¶14        If we were writing on a clean slate, we might adopt an analytic framework similar to *Caruthers*—but in light of *Morris*, we decline Butler's invitation to do so here. We are constrained by the decisions of the Arizona Supreme Court and may not overrule, modify, or disregard them. *See State v. Sullivan*, 205 Ariz. 285, 288, ¶ 15 (App. 2003).

## CONCLUSION

¶15        For the foregoing reasons, we affirm the judgment of the superior court. Furthermore, we decline to award Butler any attorney fees incurred on appeal pursuant to A.R.S. § 12-341.01(A).



AMY M. WOOD • Clerk of the Court
FILED:  AA